EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALFREDO MONTAÑEZ RAMOS, acusado y apelante.

*Número:* CR-71-17      *Resuelto:* 20 de octubre de 1972

*Torres González & Torres González,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Acusado y convicto de los delitos de epígrafe, [1] el apelante fue sentenciado en 10 de febrero de 1970 a reclusión perpetua para ser cumplida concurrentemente con las penas de 6 meses de cárcel, de 2 a 5 años de presidio, y de 3 a 8 años por la comisión de los otros delitos. El veredicto del jurado fue por votación de 9 a 3.

---

[1] NOTA DEL COMPILADOR: Los delitos son Asesinato en Primer Grado, infracciones a los Arts. 6 y 8 de la Ley de Armas y Ataque para Cometer Asesinato.

Apunta que el tribunal sentenciador incidió (1) al condenar al apelante mediante una indentificación inadecuada, insuficiente, injusta, ilegal y sugestiva; (2) al dar instrucciones al jurado distintas a la que el jurado solicitó al regresar a Sala; (3) al ofrecer instrucción sobre la defensa de coartada y de buena reputación; (4) al declarar culpable al apelante en todos los casos, sin que dicha prueba fuera suficiente ya que demostraba duda razonable sobre la culpabilidad del apelante.

(1) Examinemos primero las circunstancias del caso relacionadas con la identificación del apelante acusado de matar a tiros, en la barra del testigo Sierra Crespo, a David Trujillo Díaz, a eso de la media noche del 6 para el 7 de junio de 1969.

Al terminar la presentación de la prueba de cargo que consistió de dos testigos oculares de los hechos, uno solo de los cuales identificó al apelante como el autor de los delitos (el resto de la prueba de cargo fue técnico-médica y de fotografías del lugar, casquillos de bala y un formulario de *El Imparcial* con un escrito al dorso) la defensa planteó la falta de identificación del apelante. El juez sentenciador dictaminó que:

". . . El Tribunal entiende que el caso de la doctrina de Gómez Incera naturalmente es aplicable en Puerto Rico y es aplicable a los hechos de estos casos. Precisamente los hechos de este caso caen dentro del ámbito de la doctrina establecida por el Tribunal en que el Tribunal Supremo se niega a revocar la sentencia, por el contrario, confirma la sentencia condenatoria porque entiende que a pesar de que el procedimiento que debe seguirse es el de presentar al testigo un número de personas, un 'line up', de personas más o menos parecidas para que de ese grupo de personas el testigo señale al que a juicio del testigo fue la que cometió los hechos. Sin embargo, en el caso de Gómez Incera dice el Tribunal que no hubo una identificación sugerida por la Policía porque la identificación que se hizo fue el producto de una observación que hicieron *dos testigos de cargo por espacio de alrededor de veinte minutos mientras se cometían los hechos.* Claro, en este caso el testigo no ha estado veinte minutos obser-

vando al acusado, según su testimonio, pero el elemento del tiempo, el período de tiempo no es el único factor a considerar y una persona puede observar e identificar otra persona a veces mejor en un período menor de tiempo, depende de las circunstancias que concurran.

Por ejemplo, en el caso de Gómez Incera los dos testigos están bajo una tensión nerviosa en los momentos que se está cometiendo un atraco, un robo, tienen que estar nerviosos, tiene que estar consternada su capacidad para observar, está hasta cierto punto limitada y quizás en esas circunstancias el Tribunal Supremo entienda que un período de veinte minutos es tiempo razonable para aun una persona estando aterrorizada, nerviosa, pueda observar lo suficientemente bien al acusado para luego identificarlo.

En este caso nosotros entendemos que habiendo el testigo principal de cargo, testigo de nombre *Félix Sierra Crespo, observado al acusado según él por segundos durante esa noche, pero que también lo observó por la tarde,* a las cuatro de la tarde, cuando el testigo está tranquilo, no tiene porqué estar nervioso, no está ocurriendo nada en ese momento, habla con el acusado aunque muy brevemente, una conversación muy corta, pero es de día, lo ve pegado a él cuando él le hace la pregunta, *lo observa tranquilo, no está aterrorizado*. Esa circunstancia de que lo está observando de cerca, hablando con él pegado a él, de día, tranquilo, en unión al hecho de que viste una ropa llamativa, una ropa color orange en combinación la camisa con el pantalón y luego por la noche dentro de la nerviosidad del momento de los disparos lo ve nuevamente, le observa la ropa que es una ropa llamativa, todas esas circunstancias llevan al Tribunal a determinar que se trata de una identificación confiable. Tomando en cuenta además que no se trata de una persona que la tienen en el cuartel, o sacan al acusado de una celda sino que llega en un automóvil con un grupo de personas. Claro, es verdad que solo bajan al acusado, pero bajan al acusado del automóvil y el testigo lo señala allí al bajarse del automóvil." (Énfasis nuestro.)

Sierra Crespo identificó al apelante como el autor de los delitos en este caso el día 8 de junio de 1969. A esos efectos testificó que vio al apelante el domingo 8 de junio de 1969 "En un grupo que traía el C.I.C. El agente que se llama Alejo

Maldonado me dice 'tú conoces a éste' y yo le dije que ese era el joven"; que Maldonado mandó al apelante pararse frente al carro y entonces el testigo lo vio; que "parado nada más frente al carro, al que Alejo Maldonado sacó fue a éste [refiriéndose al apelante]."

Debemos considerar si esta identificación es válida, y no viola el debido procedimiento de ley, a la luz de la doctrina enunciada por este Tribunal en *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969) (1) la cual es de aplicación a este caso pues la referida identificación se realizó con posterioridad a la fecha en que resolvimos el caso de *Gómez Incera*, supra.

Dijimos en *Gómez Incera* que:

". . . Hasta que se adopten las reglas correspondientes nos parece que siguiendo sustancialmente, en lo que es viable conforme a nuestro procedimiento, lo dispuesto en el Art. 369 de la Ley de Enjuiciamiento Criminal para las Islas de Cuba y Puerto Rico, antes transcrito, es suficiente garantía. Así el reconocimiento o identificación se practicará poniendo a la vista del que hubiere de verificarlo al sospechoso o acusado haciéndolo comparecer en unión con otras personas de circunstancias exteriores semejantes. A presencia de todas ellas o desde un punto en que no pudiese ser vista según lo determinare la persona que está practicando la investigación, el que deba practicar el reconocimiento manifestará si se encuentra en la rueda o grupo la persona a quien hubiese hecho referencia en sus declaraciones designándola en caso afirmativo clara y determinadamente."

En *Stovall* v. *Denno*, 388 U.S. 293 (1967), se sostuvo la identificación del acusado por una señora gravemente herida por él al penetrar en la casa de ella y luego de haber matado al marido de dicha señora, porque el confrontar al acusado en el hospital con la señora herida era imperativo, de inmediata necesidad pues nadie sabía cuánto tiempo perma-

(1) Para la fecha indicada la policía debió haber sido debidamente instruida sobre su obligación de poner en práctica la norma de *Gómez Incera*, supra. Asumimos que ya se han dado las debidas instrucciones al efecto y que se está dando cumplimiento a la misma.

necería viva la señora, de manera que el único procedimiento factible era llevar al acusado a la habitación de la señora en el hospital. Es en este caso, y con referencia a las anteriores circunstancias, que el Tribunal Supremo de los Estados Unidos dijo que "la violación del debido procedimiento de ley en una confrontación depende de la totalidad de las circunstancias relacionadas con la misma. . . ."

En *Simmons* v. *United States*, 390 U.S. 377 (1968), se sostuvo la identificación de un acusado por cinco testigos separadamente en una serie de fotografías donde aparecía el acusado acompañado de otras personas. Dijo el tribunal que en este caso la identificación fotográfica era necesaria.

■ Por supuesto que este problema de la confrontación no puede surgir cuando el acusado es una persona conocida del testigo identificante con anterioridad a la comisión del delito o cuando dicho testigo testifica que observó al acusado durante un tiempo razonablemente largo mientras cometía el delito imputado, de manera que pudiera identificarlo con tal certeza y precisión que no pudiera dar lugar a un irreparable error de identificación, como en *Gómez Incera,* supra, en *Boyd* v. *State,* 472 S.W.2d 125 (Texas 1971) y en *Edmisten* v. *People,* 490 P.2d 58 (Col. 1971). [2]

■ Examinemos a continuación las circunstancias que culminaron en la identificación impugnada a fin de determinar si las mismas justifican concluir que no era necesaria la identificación "en rueda" provista por *Gómez Incera,* supra.

La prueba demuestra que:

1.—El testigo que identificó al apelante como al autor de los delitos fue Sierra Crespo quien dijo que la relación que existió entre él y el occiso, David Trujillo, consistía en la de "cliente y amigo mío, muy buena persona . . . . Trabajador y

---

[2] Véanse, además, *United States* v. *Follette*, 410 F.2d 1135 (2d Cir. 1969); *State* v. *Dessureault*, 453 P.2d 951 (Ariz. 1969); *Columbia Journal of Law and Social Problems*, Vol. 6, No. 3, págs. 345, 348–350.

cumplidor . . . me ayudaba cuando yo lo necesitaba . . . le dejaba su negocio . . . para que él [Trujillo] residiera allí en ocasiones."

2.—En el momento de los tiros, en la barra había ocho clientes sentados en los taburetes frente a la barra, otros tres más en otros sitios del establecimiento más dos empleados. Sólo a dos de éstos, amigos del occiso, fueron traídos a testificar por el fiscal y de éstos sólo uno testificó que vio al apelante hacer los disparos al occiso.

3.—La barra estaba con luz de colores algo tenue, "semioscura", según uno de los testigos. Sierra usaba espejuelos (oscuros según dijo el fiscal en el curso de su argumentación) en el momento de ocurrir los disparos. La distancia de donde está Sierra preparando la bebida a donde estaba la persona disparando se estimó en 16 pies.

4.—Sierra testificó que estaba de espaldas a la barra preparando unas bebidas cuando oyó los disparos; que *"Tan pronto oí el ruido me bajé, primero solté la bebida y tan pronto salió el muchacho corriendo yo di la vuelta . . . que no conocía o había visto al apelante antes de ese día"*; que no vio entrar al apelante a su establecimiento. (Subrayado nuestro.) Continuó testificando que "Inmediatamente al oir los disparos miré hacia el sitio de donde venían . . . porque el sitio es pequeño . . . . Todo fue rápido, cuestión de segundos"; que la persona que disparó "Después que terminó . . . salió corriendo, abrió la puerta"; dijo que "Fue pra, pra, pra pra. . . . Y entonces inmediatamente salió corriendo."; que no objetó el tiempo estimado de esto como de dos segundos; que había visto al apelante, en su establecimiento a las cuatro de la tarde cuando éste le preguntó quién era Trujillo y el testigo se lo señaló. Confrontado con su declaración que anteriormente firmó, en que dijo que "nunca lo había visto" (anteriormente) refiriéndose al apelante, dijo que eso era un error; que en dicha declaración se cometieron dos errores.

Mas, sin embargo, uno aparece específicamente corregido en ella mientras que éste de nunca haber visto al apelante antes de los hechos no aparece corregido para que la declaración concordase con su testimonio de que había visto al apelante por la tarde. Se le preguntó al testigo porqué no le dijo al fiscal que incluyera en la declaración el hecho de que había visto al apelante por la tarde del día de los hechos. Contestó: "No me explico como . . . ." Testificó que el apelante vestía por la noche la misma ropa que usaba por la tarde, o sea, camisa *"orange"* o *"brown"* en combinación con el pantalón "Más o menos del mismo color o un poquito más oscuro." Este detalle de la ropa no lo incluyó en su declaración anterior. Testificó que la descripción del autor de los delitos fue "Un hombre joven, tal como lo acabo de decir, le dije que tenía más o menos 20 años . . . un hombre alto, delgado, trigueño, . . . ." En su testimonio no hizo referencia, como lo hizo en su declaración, a que el apelante tenía el pelo rizo.

El fiscal que tomó dicha declaración fue preguntado si dejó de poner en esa declaración algún hecho que Sierra le dijera dentro de la investigación. Contestó "Ahí está todo lo que el testigo dijo." No recordó que Sierra le dijera que el apelante hubiese estado en el establecimiento de Sierra a las cuatro de la tarde el día de los hechos.

El segundo testigo de los hechos, Ramón Rivera Arocho, testificó que llegó a la barra momentos antes de los disparos. Se paró al lado del occiso ". . . en el sitio por donde entran para adentro del negocio, estaba parado pegado a la pared. Yo saqué la cartera porque ya me iba a ir, para pagarle al dueño del negocio, cuando yo estaba mirando el dinero que le iba a dar, al sonar los disparos yo según estaba mirando ahí me bajé, cuando me paré que me miro el pecho estaba herido. Entonces, en la confusión todo el mundo salió corriendo y yo al ver que nadie me asistía ni me llevaba al hospital me salí y el carro mío estaba parado alante, yo lo cogí y fuí donde la mamá mía." Preguntado si pudo ver de dónde procedían esos

disparos, contestó "No señor, porque yo estaba mirando el dinero que iba a pagar al dependiente." Testificó que la luz en la barra era en colores y que hay partes semioscuras en el establecimiento.

Es aparente de lo expuesto que la determinación del juez sentenciador al efecto de que la identificación era confiable y que no procedía la cuestión planteada por la defensa se basa mayormente en el testimonio de Sierra de que durante la tarde de los hechos vio al apelante cuando Sierra está tranquilo y habla con aquél.

No podemos convenir con el tribunal de instancia en que la identificación en cuestión es confiable. Dos son los fundamentos que justifican nuestra conclusión.

En primer lugar, no creemos que, a la luz de lo expuesto, era creíble que Sierra hubiese visto al apelante durante la tarde del día de los hechos. Creemos que el testigo Sierra, animado por su afecto hacia el occiso y, ante la posibilidad de que la identificación basada meramente en los dos segundos de duración de los hechos no se considerase confiable, trató de reforzarla con el testimonio de que lo vio por la tarde, hecho que resultó contradictorio con su propio testimonio de que "no conocía o había visto al apelante antes de ese día" así como con su declaración anterior de que "nunca lo había visto", declaración que firmó y no corrigió en cuanto a esto como lo hizo en cuanto a otro hecho que encontró expuesto en forma errónea. El fiscal que tomó esa declaración corroboró que Sierra no le dijo que hubiera visto antes al apelante y que le pidiese corregir la declaración en ese sentido.

En segundo lugar, aun asumiendo que lo hubiese visto por la tarde, ¿puede decirse con razonable certeza que Sierra vio al apelante disparar? Las siguientes circunstancias más bien indican que no lo pudo ver.

El lugar estaba en una semioscuridad. Sierra usaba espejuelos oscuros. Quedaba a unos 16 pies de donde disparó el autor de los hechos. El disparar y partir el apelante del lugar

tomó dos o tres segundos. Sierra estaba de espaldas cuando sonó el primer disparo. Los otros tres se sucedieron dentro de menos de dos segundos. Al oir el disparo Sierra primero se bajó, luego soltó la bebida que estaba preparando *"y tan pronto salió el muchacho corriendo yo di la vuelta."* (Subrayado nuestro.) De manera que no lo vio disparar sino quizás cuando ya salía corriendo lo que significaba que no lo vio de frente sino, a lo sumo, de lado, si es que en realidad no fue de espaldas. Añádase a esto el natural ingrediente del estruendo y humareda de los disparos y la reacción de temor y de inseguridad que producen aun en el ánimo de los más avezados y la alarma que inmediatamente cundió entre los allí presente pues como testificó Sierra "todo el mundo se levantó . . . todo el mundo se volvió loco y yo salí gritando 'llamen una ambulancia por favor'."

Bajo las anteriores circunstancias, es forzoso concluir que Sierra ni pudo identificar al autor de los delitos cuando los cometió ni estaba en condiciones físicas ni mentales para hacerlo y que la identificación que ha tratado de sostener durante su interrogatorio es producto de su deseo de fijar la responsabilidad por los hechos ocurridos en alguna persona en particular.

En vista de lo expuesto, resulta innecesario considerar los restantes apuntamientos. No apareciendo que el apelante ha sido legalmente identificado como el autor de los delitos que se le imputaron en esta causa, *deben revocarse las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en este caso, y absolverse al apelante.*

El Juez Asociado, Señor Dávila, emitió opinión concurrente en la cual concurren los Jueces Asociados, Señor Hernández Matos, Ramírez Bages y Torres Rigual. El Juez Asociado, Señor Martín, emitió opinión disidente en la cual concurren los Jueces Asociados, Señores Pérez Pimentel y Martínez Muñoz.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Dávila en la cual concurren los Jueces Asociados Señores Hernández Matos, Ramírez Bages y Torres Rigual

San Juan, Puerto Rico, a 20 de octubre de 1972

En *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969) consideramos extensamente la cuestión relativa a la falibilidad de la identificación. Es universalmente aceptado lo difícil que resulta identificar a una persona que sólo se ha visto un instante. (1) Allí hicimos referencia a un estudio llevado a

---

(1) Con claro y preciso lenguaje lo expresa el Juez McGowan de la Corte de Apelaciones para el Distrito de Columbia: "Sabemos por experiencia personal, lo fácil que resulta dar una descripción de alguien a quien hemos visto brevemente, y cuán difícil se nos hace el poder reconocer esa misma persona cuando la encontramos por segunda vez. Estas dificultades tienden a aumentar con la tensión emocional que es inevitablemente incidental al crimen." McGowan, *Constitutional Lnterpretation & Criminal Identification*, 12 Wm. & Mary L. Rev. 235-239 (1970).

Contrasta lo antes expuesto con la afirmación que se hace en la opinión disidente al efecto de que "[e]s bien sabido, que un instante es todo lo que se requiere para reconocer una persona que ya se conoce ['que se ha visto', sería más preciso] anteriormente." Compárese además con lo expuesto por el juez de la Corte Suprema de Nueva York, Sobel, *Criminal Identification*, 38 Brooklyn L. Rev. 261 (1971): "Muchos jueces han concluido que lo más que casi todos los testigos oculares pueden retener en su memoria es el recuerdo de los evidentes dos ojos, una nariz y una boca. Siempre es motivo de preocupación el hecho de que la culpabilidad o inocencia gire exclusivamente alrededor de un testimonio de identificación sin que exista evidencia adicional para relacionar al acusado con el crimen." y con lo que apuntan Jerome & Barbara Frank en su obra *Not Guilty* (1957) a la pág. 61: "No hace mucho un experimentado abogado escribió: 'Un análisis del testimonio de 20,000 personas a quienes se les pidió que describieran las características físicas del hombre a quien ellos vieron cometer un crimen, reveló que, en general, ellos sobreestimaron la estatura por 5 pulgadas, la edad por 8 años y en un 82% de los casos se equivocaron en el color del pelo'. De manera que en cientos de casos, testigos honestos, completamente seguros de sí mismos, han identificado erróneamente a una persona, pero afortunadamente para la mayor parte de los acusados, cada uno de ellos pudo ofrecer evidencia irrefutable de que él estaba en otro lugar al momento de cometerse el crimen." y con lo expresado por Borchard en *Convicting the Innocent*, a la pág. 367: "que el

cabo en donde se determinó que en sesenta y seis casos, en veintinueve de ellos se identificó erróneamente al acusado. Ver Wigmore, *The Science of Judicial Proof*, Sec. 250–254 (1937 ed.); Williams & Hammelmann (*Identification Parades*) 1963 Crim. L. Rev. 479, 545; Borchard, *Convicting the Innocent* (1932); Crawford, *Due Process in Extra Judicial Identification*, 24 Wash & Lee L. Rev. 107 (1967); 2 UCLA L. Rev. 552 (1954).

Precisamente lo poco confiable que resulta ser la identificación de una persona por un testigo que la ve por primera vez en momentos cargados de emoción y nerviosismo es lo que genera la reciente jurisprudencia del Tribunal Supremo de los Estados Unidos, *United States* v. *Wade*, 388 U.S. 218 (1967); *Gilbert* v. *California*, 388 U.S. 263 (1967); *Stovall* v. *Denno*, 388 U.S. 293 (1967) que tienen como objetivo garantizar que la identificación de un sospechoso se lleve a cabo en tal forma que garantice su confiabilidad.

La trilogía *Wade, Gilbert, Stovall* al sostener que una identificación basada en una confrontación sugestiva constituye una violación del debido proceso de ley representa la aportación más importante a la doctrina en las últimas décadas en el procedimiento criminal.[2] Los casos de *Mapp* v. *Ohio*, 367 U.S. 643 (1961) y *Miranda* v. *Arizona*, 384 U.S. 436 (1966) aunque más conocidos, no van a la médula de la cuestión envuelta en un proceso criminal, la inocencia o culpabilidad de un acusado. *Wade, Gilbert* y *Stovall* protegen la integridad misma del proceso judicial. Establecen un procedimiento para evitar la convicción de un inocente.

En *Pueblo* v. *Gómez Incera*, supra, al enfrentarnos por primera vez con esta cuestión, a la pág. 253, expresamos:

balance emocional de la víctima o del testigo ocular es perturbado en tal forma por su experiencia extraordinaria que sus poderes de percepción se distorcionan y su identificación frecuentemente no es confiable."

[2] En *Kirby* v. *Illinois*, 405 U.S. 951 (1972) se ratifica esta doctrina.

"Conociendo los errores que se pueden cometer en la identificación de una persona que sólo ha sido observada por tiempo limitado, en circunstancias de tensión y nerviosismo que necesariamente afectan el sentido de percepción, esta fase del proceso investigativo debe rodearse con las salvaguardas necesarias que eviten que se malogre la justicia. No se debe depender de la identificación que pueda hacer en corte el día del juicio. La identificación en el juicio estaría maculada por los vicios de que adoleció là llevada a cabo en la etapa investigativa. Ver *People v. Caruso*, supra; IV Wigmore, On Evidence, Sec. 1130 (ed. 1940). Los testigos ya habían determinado que el acusado era el responsable. La identificación durante el juicio resulta una mera formalidad. Como se expresó en el artículo escrito por Williams and Hammelmann, supra, y que se cita en Wade a la pág. 229: 'La experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se retracte más tarde, de tal manera que en la práctica la controversia de la identificación puede (en la ausencia de otra evidencia relevante) para todos los propósitos prácticos ser determinada en ese momento, antes del juicio. . . .'"

. . . . . . . . .

Es interesante apuntar que la Ley Española de Enjuiciamiento Criminal disponía en su Art. 369 que '[l]a diligencia de reconocimiento se practicará poniendo a la vista del que hubiere de verificarlo la persona que haya de ser reconocida, haciéndola comparecer en unión con otras de circunstancias exteriores semejantes. A presencia de todas ellas, o desde un punto en que no pudiere ser visto, según al juez pareciere más conveniente, el que deba practicar el reconocimiento manifestará si se encuentra en la rueda o grupo la persona a quien hubiese hecho referencia en sus declaraciones, designándola, en caso afirmativo, clara y determinadamente. En la diligencia que se extienda se harán constar todas las circunstancias del acto, así como los nombres de todos los que hubiesen formado la rueda o grupo."

A pesar de lo expuesto en *Gómez Incera*, la policía en el presente caso no siguió la pauta allí recomendada. Por el contrario, señaló al sospechoso diciéndole al testigo "tú conoces a éste." Es preciso destacar que esto ocurrió a pesar de

que el sospechoso estaba en un grupo que tenía bajo custodia la policía. Y en vez de presentárselo junto a los otros del grupo, situó al acusado frente al vehículo de la policía para que el testigo lo identificara, haciendo así más obvia la sugestión. Fácil le hubiera sido ajustarse a las normas sugeridas en *Gómez Incera* para garantizar que la identificación era confiable.

En forma alguna el caso de *Gómez Incera* es autoridad para sostener la tesis de que en toda ocasión se puede descartar la confrontación en rueda, y aplicar la norma de la "totalidad de las circunstancias" que allí se empleó para sostener que la identificación era confiable.

*Gómez Incera* sí es autoridad para sostener que, si por circunstancias fuera del control de la policía se hace imperativo prescindir de la presentación en rueda del sospechoso para poder llevar a cabo la investigación, la identificación que así se haga puede ser confiable si de la totalidad de las circunstancias que la rodean surge que no se han vulnerado los derechos del acusado. Pero siempre hay que tener presente, como expresó la Corte de Apelaciones de Nueva York en *People* v. *Ballott*, 233 N.E. 103–106 (1969), que "[E]n ausencia de circunstancias que obliguen a recurrir a tal procedimiento, la práctica de que un testigo secretamente observe, para propósitos de identificación, solamente al único sospechoso que la policía tiene bajo su custodia por el crimen, puede ser 'tan innecesariamente sugestiva y conducente a una identificación errónea' e irreparable que conlleve a una negación del debido procedimiento de ley." Ver además *Pre Trial Identification*, 55 Minn. L. Rev. 779–790–791 *et seq.* (1971); Sobel, *Criminal Identification*, 38 Brooklyn L. Rev. 261–264–275 (1971). En este último artículo se dice a la pág. 264: "No hay duda, sin embargo, de que una rueda de detenidos ecuánimemente dirigida sigue siendo el mejor medio disponible para obtener identificaciones exactas antes del

juicio. Cualquier procedimiento de menor exactitud conducido cuando existe la oportunidad para una rueda de detenidos, tales como 'la confrontación del testigo con el sospechoso únicamente' o 'la identificación a través de fotografías', deben estar justificadas por circunstancias que hacen impracticable el procedimiento de la rueda de detenidos." Se han expresado criterios en el sentido que toda identificación que no se haga en rueda viola el debido proceso de ley. *Wright* v. *United States,* 404 F.2d 1256, 1262 (D.C. Cir. 1968) (Bazelon, *C.J.* disintiendo). Ver además *Due Process Considerations in Police Showup Practices,* 44 N.Y.U. L. Rev. 377 (1969).

Lo anteriormente expuesto sería suficiente para disponer del presente caso y decretar la inadmisibilidad de la identificación ya que como expresó la Corte Suprema de los Estados Unidos en *Gilbert* v. *California,* supra, pág. 273: "solamente una regla de exclusión *per se* en cuanto a tal testimonio puede ser una sanción efectiva para asegurar que las autoridades policíacas respeten el derecho constitucional del acusado . . . ."

Pero, a los efectos de considerar la posición de la disidencia, de que aquí concurren las circunstancias extraordinarias que justifican apartarse de lo pautado en *Gómez Incera* (presentar al sospechoso en una rueda), todavía se hace imperativo revocar la sentencia.

En el presente caso cuando la defensa planteó al tribunal de instancia que el proceso de identificación del acusado no cumplía con las normas sugeridas en *Gómez Incera,* al desestimar el planteamiento, el Tribunal expresó:

"Entendemos que no procede la cuestión planteada por la Defensa por lo que se declara sin lugar la misma ya que es una cuestión para el jurado resolver si esa identificación en esa circunstancia le satisface a ellos en cuanto a que esa era la persona que cometió los hechos que se le imputan en las acusaciones formuladas por el Ministerio Público en estos casos." (T.E. págs. 180–181)

Surge de la transcripción de evidencia que antes del jurado retirarse a deliberar la defensa pidió al tribunal que instruyera al jurado sobre ese extremo y el tribunal rehusó. [3]

Para que el jurado hiciera una determinación consciente sobre la credibilidad de la prueba presentada relacionada con

---

[3] Copiamos el incidente completo:

"Lic. Torres González:

Entonces, Vuestro Honor, entendemos que en este caso en particular a pesar de la resolución del Honorable Tribunal en el sentido de que admitía que había una adecuada identificación o que era suficiente en derecho por cuestión de tiempo, el jurado no está debidamente orientado en el sentido de lo que en cuanto a la ley debe ser el mínimo de identificación de acuerdo con el caso de El Pueblo de Puerto Rico vs. Tribunal Superior y el caso de Gómez Incera. Entendemos que . . . .

Hon. Juez:

¿Por qué el compañero no produjo esa instrucción cuando invitamos a hacerlo?

Lic. Torres González:

Le aseguro que fue por omisión de mi parte no haberla pedido cuando dio las instrucciones especiales y me levanté y le dije al Tribunal que no tenía especiales creyendo que el Tribunal las habría de dar cuando estableciera la duda razonable y la convertiría en general, pero al ver que no la incluyó en las instrucciones en cuanto a duda razonable no tengo más remedio que pedirle al Tribunal que imparta esas instrucciones sobre la identificación cuando no está garantizada por la asistencia de abogado. Solicitamos del Honorable Tribunal se le diga al jurado que aquella identificación que es ajena a representación de abogado y que no se siguen las normas establecidas como el Tribunal Supremo o la ley establece en Puerto Rico que debe hacerse para una adecuada identificación, que deben de tomar en consideración si todo eso se hizo y si no se hizo, si a pesar de no haberse hecho las gestiones que debían la identificación queda adecuadamente establecida.

Hon. Juez:

Esa es una cuestión de derecho que resolvió el Tribunal. Como cuestión de hechos el jurado va a pasar sobre la prueba y va a determinar si fue el acusado quien hizo los disparos o si tienen duda razonable y fundada, esa es la cuestión de hechos que tiene que resolver el jurado.

Lic. Torres González:

Cómo va a entender el hecho de que el Fiscal está obligado a demostrar la culpabilidad más allá de duda razonable si él no sabe, el jurado, cómo va a decidir la cuantía de prueba que en cuanto a identificación necesita obligatoriamente demostrar el Fiscal. Yo le pido al Tribunal instruir al jurado de que el Fiscal tiene que demostrar la culpabilidad del acusado más allá de duda razonable, qué el Fiscal tiene la obligación de demostrar

la identificación del apelante, el juez debió haberlo instruido adecuadamente sobre este extremo. Procedía instruirle que al jurado incumbía determinar si la identificación del acusado había sido establecida más allá de duda razonable; que lo aconsejable es que se presente al sospechoso en unión de otras personas para que el testigo proceda a identificarlo, que en el presente caso no se hizo así, pero que si los jurados entendían que por el hecho del testigo haber declarado que lo había visto por la tarde, era innecesaria la confrontación en rueda, a ellos incumbía determinar si la identificación era confiable. Sin estas instrucciones lo expuesto en la opinión disidente al efecto de que "Los gestos, las inflexiones en la voz, los titubeos, así como la seguridad o certeza demostrada por los testigos ante el jurado deben tener un gran peso para los miembros de este Tribunal, y es por ello que no es difícil hacer caso omiso de ello y sustituir su criterio por el nuestro." no tiene fundamento en el récord. ([4])

---

dentro de la prueba un mínimo de identificación que debe ir no meramente a una mera conjetura o sospecha de lo que pueda la prueba determinar. Fíjese que podría un caso terminar si en lugar de Vuestro Honor resolver esta cuestión sin lugar me la resuelve con lugar no hubiera caso y lo probable si lo pido esa cuestión de derecho ya el Tribunal la resolvió y entiendo que el Tribunal la resolvió tomando en consideración que lo había visto dos veces. Si el jurado encuentra probado que no lo vio por primera vez se desecha esa parte de su declaración y solamente queda la declaración del testigo. . . . Si hiciera eso cómo va él a determinar si aquello cumple o no con el mínimo de prueba que tenga el Fiscal la obligación de presentar. Por eso solicito al Tribunal, en la forma que el Tribunal lo crea conveniente, llame al jurado y dé esas instrucciones.

HON. JUEZ:
    ¿ Algo más?

LIC. TORRES GONZÁLEZ:
    Eso es todo.

HON. JUEZ:
    Sin lugar la solicitud de la defensa."

([4]) Que es necesaria una instrucción sobre estos extremos para que el jurado pueda hacer una adjudicación consciente lo demuestra el hecho de que ya se han sugerido instrucciones específicas sobre esta materia. Ver Kestell, *Lineups Identification,* 5 University of San Francisco L. Rev. 85–103 (1970).

Me parece que es inescapable la conclusión de que el jurado no pudo haber hecho una determinación consciente relacionada con la credibilidad de la prueba sobre la identifición del apelante.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín en la cual concurren los Jueces Asociados Señores Pérez Pimentel y Martínez Muñoz

San Juan, Puerto Rico, a 20 de octubre de 1972

Disiento. En *Pueblo* v. *Morales Romero*, 100 D.P.R. 436 (1972), al referirnos al caso de *Gómez Incera*[1] dijimos:

"En *Gómez Incera* aparte de sugerir unas normas que deben seguirse en el procedimiento de identificación adoptamos la básica y fundamental doctrina establecida en los casos de *Stovall*[2] y *Simmons*[3] al efecto de que la determinación de si se ha violado el debido procedimiento de ley, en el proceso de identificación de un sospechoso, depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación."

Las normas de *Gómez Incera*[4] deben seguirse en todo lo que sea posible a los fines de que se cumpla con los requisitos del debido proceso de ley. Estamos contestes en que debe evitarse la práctica de presentar una sola persona ante un testigo para identificación. Pero dichas normas no deben constituir una camisa de fuerza que impida el que se considere la totalidad de las circunstancias que rodearon el procedimiento de identificación, lo que podrá suplir la omisión en

---

[1] *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969).

[2] *Stovall* v. *United States*, 388 U.S. 293 (1967).

[3] *Simmons* v. *United States*, 390 U.S. 377 (1968).

[4] El caso de *Gómez Incera* fue resuelto aproximadamente un mes antes de que se efectuara la identificación que se impugna en este caso. Es conveniente señalar que dicho caso fue objeto de reconsideración, y no fue hasta el 5 de diciembre de 1969, seis meses después de ocurridos los hechos en este caso, que finalmente se dispuso de la reconsideración.

la observancia de cualesquiera de las normas de *Gómez Incera*.

Un cuidadoso análisis del testimonio del testigo principal de cargo, Félix Sierra Crespo, con respecto a la identificación del apelante revela los siguientes hechos. Que en la tarde del día de los hechos el apelante había estado en su negocio y había inquirido por el occiso. Que nunca había visto al apelante antes de ese día. Que el apelante vestía una ropa llamativa, color *"orange"* combinando la camisa con el pantalón. Que era un hombre joven, de más o menos 20 años de edad, alto, delgado y trigueño. Que por la noche, al ocurrir el tiroteo en su negocio volvió a ver al apelante, aunque un instante, con la misma ropa que vestía por la tarde. Surge de la prueba que dicho sitio de negocio era semioscuro, pero no oscuro; que el apelante estaba situado, mientras disparaba, a unos 16 pies de donde estaba parado el testigo, frente a una vellonera que proyectaba el resplandor de dos bombillas grandes además del de unas bombillas en colores dentro de la vellonera; que había luz además sobre una mesa de billar donde jugaban unos parroquianos consistente de una bombilla fuerte y una lámpara fluorescente; que había una luz rosada en la barra; todo ello en un local pequeño que mide $18 \times 24$ pies.

No nos olvidemos que el testigo Sierra Crespo está acostumbrado a la luz tenue del local. Es bien sabido que el ojo humano es una especie de cámara fotográfica que tiene una abertura ajustable para admitir luz. Esa función de ajuste la ejerce la pupila al dilatarse gradualmente a medida que va aumentando la oscuridad, lográndose así una mayor entrada de luz. El matador al entrar al interior semioscuro del negocio, necesariamente tenía mayor dificultad que el testigo para ajustar su visión en la oscuridad. Sin embargo, es en esa semioscuridad que se dirige a su víctima, quien se encontraba sentada en una de las banquetas de la barra, al

lado del testigo Ramón Rivera Arocho, procediendo a abalearla con una gran precisión, causándole tres heridas de bala.

Para el testigo Sierra Crespo, el apelante no era un desconocido, ya que le había visto unas horas antes de ocurrir los hechos, y le volvió a ver, aunque por unos instantes, en la noche de ese mismo día mientras disparaba al occiso. Tan es así que el testigo, con anterioridad al arresto, pudo dar a la policía una descripción del apelante.

Cuando el testigo vio al apelante, por primera vez, en horas de la tarde, aquél estaba tranquilo, sosegado y sereno. La segunda vez que lo ve, o sea, al ocurrir el tiroteo, es indudable que las circunstancias le causaron sorpresa, pánico y confusión en un local de luz tenue, en medio de unos hechos que se desarrollaron en un instante. Es bien sabido, que un instante es todo lo que se requiere para reconocer una persona que ya se conoce anteriormente. De esta particularidad podemos los humanos dar fe. El testigo declara no tener duda de que el apelante es la misma persona que había visto en horas de la tarde. Quedó probada aún más su seguridad sobre la identidad del apelante cuando lo identifica al bajarse éste del automóvil de la policía donde venía el apelante en compañía de otras personas.

La mayoría concluye que no es creíble la declaración de Sierra Crespo al decir que había visto al apelante la tarde de los hechos. Esta conclusión pasa por alto el hecho de que en la misma madrugada de la comisión del delito el testigo dio a la policía una descripción de la identidad del matador, lo que lógicamente no habría podido hacer si no hubiera visto al acusado por la tarde. Más aún, nos inquieta la afirmación que hace la mayoría al efecto de que el testigo Sierra Crespo, movido por su afecto hacia el occiso, y en ánimo de fijar la responsabilidad sobre alguna persona en particular, declaró con prejuicio contra el apelante al decir en el juicio que "no conocía o había visto al apelante antes de ese día", y que tales manifestaciones contradecían su declaración anterior ante el

fiscal en el sentido de que "nunca lo había visto." A nuestro juicio tal contradicción es inexistente y por el contrario ambos testimonios son compatibles. El testigo dijo, en efecto, que nunca había visto al apelante, o sea, refiriéndose, a nuestro juicio, a que nunca le había visto antes del día de los hechos. No podemos olvidar que las dos veces que el testigo vio al apelante acontecen el mismo día, no en días distintos. Su memoria, por lo tanto, estaba fresca. La aclaración de "ese día" que hace el testigo en el juicio disipa cualquier duda que pudiera existir en su anterior declaración ante el fiscal. Cabe observar que las manifestaciones del testigo ante el fiscal responden a unas preguntas específicas que éste le hiciera a aquél en aquella ocasión. No teniendo ante nos la naturaleza de las preguntas dirigidas al testigo por el fiscal al tomarle la declaración original no estamos en condiciones de analizar debidamente su declaración ante el fiscal. Cualquier inferencia que ahora podamos hacer de ello en contra de la prueba presentada y no refutada, contradicha ni impugnada, es pura especulación.

Los hechos ya relatados fueron objeto de expresiones ante los miembros del jurado, los que vieron y oyeron los testimonios, y quienes estuvieron en mejor posición que nosotros para apreciar la veracidad de los mismos. Los gestos, las inflexiones en la voz, los titubeos, así como la seguridad o certeza demostrada por los testigos ante el jurado deben tener un gran peso para los miembros de este Tribunal, y es por ello que no es difícil hacer caso omiso de ello y sustituir su criterio por el nuestro. La opinión concurrente de los distinguidos compañeros jueces de este Tribunal no concede importancia alguna a la prueba que tuvo ante sí el jurado de que el testigo Sierra Crespo había visto al acusado la tarde del día de los hechos, luego lo volvió a ver un instante en el momento de los hechos, y más aún ofreció a la policía una descripción del acusado en la misma noche de los hechos. Tal

prueba ante la consideración del jurado le da confiabilidad a la identificación hecha en el juicio.

La doctrina establecida en los casos de *Stovall* y *Simmons*, supra, para la determinación de lo que constituye debido procedimiento de ley en el proceso de identificación es algo amplia. La aplicación de dicha doctrina requiere, lógicamente, una determinación sobre los hechos particulares del caso específico. Tal determinación recae sobre los hombros del juzgador, cuya función envuelve discernimiento, objetividad, imparcialidad, percepción y sentido de justicia.

No obstante el criterio que expresamos en este disenso creemos que debe evitarse en lo que sea posible el que la confrontación que se efectúe en cualquier caso sea tan marcadamente sugestiva que resultare en un error irreversible de identificación, lo que claramente constituiría una violación del debido procedimiento de ley.

No tenemos duda, sin embargo, de que la identificación del apelante en el caso de autos cumplió con los requisitos del debido procedimiento de ley y que su convicción estuvo basada en la apreciación de todas las circunstancias que rodearon el proceso de identificación.

En relación con el señalamiento de la opinión concurrente en el sentido de que erró el tribunal sentenciador al no instruir al jurado sobre las normas sugeridas en *Gómez Incera*, nos parece que la determinación sobre el cumplimiento de dichas normas, a la luz de todas las circunstancias que rodearon el proceso de identificación, por ser una cuestión de derecho, competía resolverla al juez sentenciador quien en efecto la resolvió correctamente.

La sentencia apelada ha debido ser confirmada.