EL PUEBLO DE PUERTO RICO, apelado, *v.* ESTEBAN DE JESÚS RIVERA, acusado y apelante.

*Número:* CR-81-31      *Resuelto:* 7 de febrero de 1983

818

*Felipe Benicio Sánchez, Andrés García Arache,* y *Román Santos Isaac,* abogados del apelante; *Miguel Pagán, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 27 de noviembre de 1980 —Día de Acción de Gracias— en horas de la mañana el joven Roberto Cintrón se dirigía, en unión a los hermanos Ricardo y Luis Garced Meléndez, en su automóvil marca Chevrolet Corvette por el Expreso Trujillo Alto en dirección a la Avenida 65 de Infantería, siendo el sector conocido como "El Yunque", Palmer, Puerto Rico, el destino final de su viaje. Estando detenido en uno de los semáforos del mencionado expreso, se le atravesó bruscamente al frente de su automóvil un vehículo de motor —de los conocidos como *station wagons*— marca Ford Fairmont, color crema mostaza, con paneles a los lados semejando madera color vino, en el cual viajaba únicamente su conductor. Al cambiar la luz del semáforo a verde, la *station wagon* arrancó al frente, pero el Corvette

conducido por Cintrón le dio alcance y rebasó la misma; al llegar a la Avenida 65 de Infantería ambos vehículos doblaron a la derecha, en dirección a Carolina, Puerto Rico. Ya en dicha avenida la *station wagon* le pasó al Corvette y al así hacerlo, en palabras del testigo Ricardo Garced Meléndez, les dio un "corte de pastelillo", o sea, le cortó al frente en una forma extremadamente brusca. Luego de ello, ambos vehículos se ven obligados a detenerse én un semáforo: la *station wagon* en el carril de la extrema izquierda —de los utilizados para poder virar en dirección contraria— y el Corvette en uno de los carriles ordinarios de dicha avenida. Estando detenidos, el joven Luis Garced Meléndez le gritó en voz alta al conductor de la *station wagon*: "Mira, pendejo, nos vas a chocar." Acto seguido, el conductor de la *station wagon* realiza una maniobra en contra del tránsito con el propósito de poder detenerse al lado del Corvette, una vez detenido se inclina hacia el lado derecho de su automóvil, "estiró la mano derecha", e hizo tres disparos en dirección al Corvette: uno de ellos impactó la puerta derecha del Corvette y otro hirió en la frente al joven Roberto Cintrón. Luego de transcurrir varios segundos, la *station wagon* se alejó del lugar. Los hermanos Ricardo y Luis Garced Meléndez procedieron a llevar al herido al Hospital San Martín, localizado éste en Río Piedras, Puerto Rico, de donde fue trasladado al Centro Médico de Puerto Rico, muriendo el joven Roberto Cintrón el día 1ro de diciembre de 1980 como consecuencia de la herida de bala que recibió el 27 de noviembre de 1980.

En relación con dichos hechos, el Ministerio Público juró denuncias, radicando luego los correspondientes pliegos acusatorios, contra Esteban De Jesús Rivera, conocida figura en el ambiente deportivo de Puerto Rico, especialmente en el boxístico. El correspondiente proceso se celebró *por tribunal de derecho* ante el Hon. Elpidio Batista, Juez del Tribunal Superior de Puerto Rico, Sala de San Juan, el cual, luego de un juicio que se extendió por espacio de

aproximadamente una semana, lo declaró culpable y convicto de los delitos imputados de asesinato en primer grado e infracción de los Arts. 6 y 8 de la Ley de Armas de Puerto Rico.

En apelación se le imputa al tribunal de instancia la supuesta comisión de cinco (5) errores, a saber:

Primer error:

Erró el Honorable Tribunal Sentenciador al declarar SIN LUGAR la Moción Sobre Supresión de Evidencia de Identificación.

Segundo error:

Erró el Honorable Tribunal Sentenciador al admitir en evidencia la identificación del acusado en la Rueda de Confrontación, la fotografía y el Acta de tal Rueda de Confrontación.

Tercer error:

Erró el Honorable Tribunal Sentenciador al admitir prueba de referencia y prueba de identificación extrajudicial del acusado.

Cuarto error:

Erró el Honorable Tribunal Sentenciador al descartar o no darle crédito a la prueba de coartada presentada por el acusado.

Quinto error:

Erró el Honorable Tribunal Sentenciador al permitir al Fiscal comentar el silencio del acusado.

## I

Por estar íntimamente relacionados entre sí, discutiremos los señalamientos de errores primero, segundo y tercero conjuntamente. La posición del apelante, respecto a la prueba presentada por el Ministerio Público tendente a señalarlo a él como la persona que hizo el disparo que le causó la muerte al joven Roberto Cintrón, se puede resumir de la siguiente forma: A– El tribunal de instancia cometió error al no suprimir el resultado de la rueda de detenidos

que se llevó a efecto en el presente caso por razón de que la misma está viciada de nulidad; B– independientemente de lo anterior, la prueba sobre la identidad del acusado no es confiable y/o no es suficiente, más allá de duda razonable, para sostener las convicciones; y C– el tribunal de instancia cometió error, que amerita la revocación de dichas convicciones, al admitir prueba de identificación extrajudicial del imputado. *No tiene razón.* Veamos por qué.

A– Somos conscientes de que "No puede haber un juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un crimen"; que "la identificación del acusado es una fase esencial en el procedimiento criminal"; y que "los procedimientos que llevan a una identificación ocular pueden estar tan viciados que como cuestión de derecho hagan constitucionalmente inadmisible la identificación". *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249, 251, 252 (1969).

El procedimiento a seguirse por las autoridades en la identificación de un sospechoso con anterioridad al juicio está regulado por la Regla 252 de las de Procedimiento Criminal, la cual, como sabemos, versa sobre la llamada "rueda de detenidos" (*lineup*). En el presente caso se celebró una rueda de detenidos, la cual se llevó a efecto aproximadamente veinte (20) días después del día de los hechos.[1]

El apelante argumenta que la rueda de detenidos que se llevó a cabo, y en la cual él fue identificado por dos testigos, estuvo viciada de nulidad —y por lo tanto el resultado de la misma no debió ser admitido en evidencia por el tribunal de instancia— por tres fundamentos: *(1)* los dos testigos de identificación fueron mantenidos juntos en la oficina de un oficial en el Cuartel General de la Policía de Puerto Rico con anterioridad a celebrarse là rueda de detenidos, en vio-

---

[1] Debido ello, principalmente, a que el aquí apelante no pudo ser localizado antes por la Policía de Puerto Rico por motivo de haber sido recluido éste en la Clínica Juliá, Hato Rey, Puerto Rico.

lación de la Regla 252.1(e)(4); *(2)* el aquí apelante, durante la rueda de detenidos vestía ropas distintas —oscuras— a las demás personas que componían dicha rueda, en violación de la Regla 252.1(d)(1) y (3); y *(3)* uno de los agentes de la Policía de Puerto Rico le informó al testigo Ricardo Garced Meléndez que en la rueda de detenidos se encontraba un sospechoso, en violación de la Regla 252.1(e)(2), (3), (5) y (7).

■ A(*1*)— Es correcto que la Regla 252.1(e)(4) de Procedimiento Criminal establece que: "Si dos o más testigos fueran a participar como identificantes no se permitirá que se comuniquen entre sí antes o durante la identificación y cada uno hará la identificación por separado." Igualmente correcto es el hecho de que los testigos Ricardo y Luis Garced Meléndez permanecieron juntos en una oficina del cuartel de la Policía de Puerto Rico con anterioridad al momento de la celebración de la rueda de detenidos. No podemos, sin embargo, sustraernos al hecho de que dichos testigos son hermanos que viven bajo un mismo techo. Realmente sería hasta absurdo el requerir de la Policía el que hubieran separado a dichos testigos minutos antes de celebrarse la rueda, cuando ellos, repetimos, viven juntos. La Policía, sin embargo, trató, bajo las circunstancias, de garantizar al máximo los derechos del apelante: celebró *dos* ruedas de detenidos —donde al acusado se le cambió el número de identificación que llevaba al cuello—, una para cada uno de dichos testigos, y los mantuvo separados durante el intervalo de tiempo entre ambas ruedas.

■ A(*2*)— Surge de la fotografía tomada durante la rueda de detenidos que se llevó a efecto, que el apelante vestía camisa oscura mientras los demás componentes de dicha rueda tenían camisas claras. La Regla 252.1(d)(1) dispone que "Los integrantes de la rueda de detenidos tendrán *apariencia física similar* a la del sospechoso *respecto* a sexo, color, raza y, *hasta donde sea posible*, su estatura, edad, peso y vestimenta deben guardar relación

con las del sospechoso". (Énfasis suplido.) Como podemos notar, el hecho de la similitud de la vestimenta *no* es mandatorio. Nos parece a nosotros que similitud, en cuanto a las restantes características mencionadas, es mucho más importante. A esos efectos tenemos que un examen de la foto tomada demuestra que la Policía de Puerto Rico hizo en el presente caso un esfuerzo notable para que los restantes componentes de dicha rueda guardaran un fuerte parecido con el apelante. En adición a lo anteriormente expresado, la prueba desfilada demuestra que el abogado privado que asistió al apelante durante la rueda de detenidos —Lcdo. Matías Díaz García— fue apercibido del hecho de la vestimenta distinta con anterioridad a la celebración de la citada rueda y expresamente informó que no tenía objeción a ello.(2)

A(*3*)— La Regla 252.1(e)(2) estatuye que "No se le informará a los testigos antes de la celebración de la rueda que se tiene detenido a un sospechoso". En el presente caso se hizo. No hay duda de que la Policía debe hacer un esfuerzo por cumplir con éste y todos los demás requisitos estatuidos en la citada Regla 252.1. Ahora bien, entendemos que el error cometido no es de tal magnitud como para viciar de nulidad la rueda celebrada, ello debido a que cuando la Policía de Puerto Rico requiere a una persona que fue testigo presencial de unos hechos para que comparezca al cuartel a participar en una rueda de detenidos, es de esperarse el que a esa persona —si tiene inteligencia normal promedio— por lo menos se le ocurra el pensamiento de que dentro del grupo de personas que van a participar en esa rueda debe haber uno o varios sospechosos. La infracción cometida, por tanto, no tiene el grado de sugestión que le atribuye el apelante.

---

(2) "[M]eros errores o equivocaciones del defensor no justifican que se deje sin efecto una sentencia, a menos que se trate de una situación que haya convertido el proceso en una farsa o negación palmaria de la justicia." *Pueblo* v. *Marrero Laffosse*, 95 D.P.R. 186, 190 (1967). Véase, en adición, *Pueblo* v. *Mojica Pedrosa*, 92 D.P.R. 733 (1965).

En resumen, un examen de la totalidad de las circunstancias que rodearon el *lineup* que se llevó a cabo en el presente caso nos convence de que el mismo no estuvo viciado por irregularidades que afectaran derechos sustanciales del aquí apelante y que ameriten que el resultado del mismo sea suprimido. *Pueblo* v. *Peterson Pietersz*, 107 D.P.R. 172 (1978).

B— El apelante argumenta, además, que independientemente de los señalamientos que hace en el apartado anterior, la prueba presentada por el Ministerio Fiscal que lo señala a él como el responsable de los hechos acaecidos el 27 de noviembre de 1980 no es ni confiable ni suficiente, como cuestión de derecho, para sostener las convicciones.

Respecto a la "confiabilidad y/o suficiencia de la identificación" realizada en el presente caso, debemos enfatizar el hecho de que, aparte de los tres antes mencionados señalamientos sobre supuestas violaciones a la Regla 252 de las de Procedimiento Criminal, *no hay señalamiento adicional por parte del apelante sobre "sugestividad e insinuación" en el proceso de identificación que se llevó a cabo en el presente caso.*

En *Pueblo* v. *Peterson Pietersz,* supra, adoptamos como criterios a considerarse al analizar la prueba sobre identificación los siguientes: 1— la oportunidad que tuvo el testigo de observar al ofensor al tiempo en que cometía el crimen; 2— el grado de atención del testigo; 3— la corrección de la descripción previa del criminal hecha por el testigo; 4— el nivel de certeza demostrado por el testigo en la confrontación; y 5— el tiempo transcurrido entre el crimen y la confrontación.

La prueba presentada por el Ministerio Público a esos efectos —por conducto del testigo Ricardo Garced Meléndez— *y creída por el tribunal de instancia* demostró que dicho testigo observó a la persona que conducía la *station wagon,* antes y después de los disparos, por un período aproximado de 10 a 12 segundos; que se pudo fijar bien, ya

que no se puso nervioso; que dicha persona se le pareció mucho en esos momentos al boxeador Esteban De Jesús, a quien "conocía" por haberlo visto en la pelea con Roberto Durán y en fotos en los periódicos, hecho que informó a los agentes de la Policía de Puerto Rico; que dicho testigo identificó *inmediatamente* al apelante en la rueda de detenidos, habiéndose celebrado la misma a los veinte días del día de los hechos. (³)

Si a ello añadimos que el referido testigo identificó ante agentes de la Policía de Puerto Rico, en una urbanización de Río Piedras, la *station wagon* que supuestamente guiaba el apelante el día de los hechos y *la cual resultó pertenecer a la esposa del apelante* según los records del Departamento de Transportación y Obras Públicas de Puerto Rico, en relación con la cual el testigo recordaba —y así lo había informado a un agente investigador en el caso— los últimos tres números de la tablilla, es evidente que la prueba presentada por el Ministerio Fiscal en el presente caso no sólo es confiable sino que es suficiente, como cuestión de derecho —de ser creída la misma—, para sostener las convicciones apeladas. (⁴)

■ C— Argumenta el apelante que el tribunal de instancia cometió error que amerita la revocación de las sentencias dictadas al admitir prueba, *por voz de los agentes de la Policía de Puerto Rico que intervinieron en la investigación del caso*, a los efectos de que el testigo Ricardo Garced Meléndez les había informado que la persona que había hecho los disparos se le parecía al boxeador Esteban

---

(³) Como expresamos anteriormente, la rueda de detenidos no se pudo celebrar antes por estar recluido el apelante en la Clínica Juliá.

(⁴) Es cierto que el testigo Ricardo Garced Meléndez tuvo problemas para describir, ante el dibujante de la Policía de Puerto Rico que prepara bocetos, a la persona que él había visto y sobre la cual él insistía se parecía al apelante. Sin embargo, le señaló a dicho artista, dentro de un libro de bocetos previamente preparados, uno de ellos como "la misma cara" de la persona que él había visto hacer los disparos. Un examen de dicho boceto confirma la impresión del testigo: el mismo tiene un parecido impresionante con el apelante.

De Jesús Rivera o era él mismo. No le asiste la razón al apelante. El juicio celebrado fue por tribunal de derecho; el juez de instancia al admitir dicha prueba hizo constar que la misma "no hacía prueba contra el acusado". A diferencia de un Jurado, un juez es un técnico del derecho; el juez de instancia, en específico, tiene mucha experiencia, está calificado y entrenado para evaluar la prueba que se le presente y admitir la misma en cuanto a un aspecto y descartarla en cuanto a otros. En adición, el testigo que supuestamente había hecho dichas manifestaciones a los agentes —Ricardo Garced Meléndez— estuvo presente y declaró durante el proceso y fue contrainterrogado sobre este tema por los abogados del apelante. Véanse: Regla 63 de las de Evidencia de 1979, y *Pueblo* v. *Esteves Rosado*, 110 D.P.R. 334 (1980).

## II

Mediante el cuarto error se queja el apelante de que el tribunal de instancia descartó o no le dió crédito a su prueba de coartada.

La prueba de coartada presentada por el apelante, obviamente no le mereció crédito alguno al tribunal de instancia. El juzgador de los hechos tiene facultad para dar a la prueba de coartada el valor probatorio que estime adecuado. *Pueblo* v. *Moreu Pérez*, 96 D.P.R. 60 (1968). El mero hecho de que el Ministerio Público no presentara prueba de refutación respecto a la prueba de coartada presentada por la defensa no obliga al tribunal de instancia a darle crédito a dicha prueba. *Pueblo* v. *Acosta Acosta*, 107 D.P.R. 68 (1978). Reiteradamente hemos resuelto que en ausencia de error manifiesto, prejuicio, parcialidad o pasión, no existe fundamento en derecho para intervenir con las determinaciones que haga el tribunal de instancia. *Pueblo* v. *López Pérez*, 106 D.P.R. 584 (1977). No hay indicio alguno de ello en el presente caso.

## III

Mediante el quinto señalamiento de error se queja el apelante de que el tribunal de instancia, al permitir que dos agentes investigadores declararan que ellos realizaron gestiones que resultaron infructuosas para localizar al apelante una vez el testigo Ricardo Garced Meléndez les informó que éste era el autor de los hechos, permitió que el fiscal comentara el silencio del acusado. Dicho señalamiento de error es totalmente inmeritorio. Dicha prueba no constituye un comentario al silencio del acusado. La misma, como bien señala el honorable Procurador General en su alegato, "sólo iba dirigida a demostrar las gestiones realizadas por la Policía para localizar al sospechoso y celebrar prontamente una rueda de detenidos según lo requiere *Peterson Pietersz*, supra".

*Se dictará sentencia en que se confirmen las dictadas por el tribunal de instancia en los casos G-81-181 y 182 y M-80-2769.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Torres Rigual y Negrón García concurren en el resultado sin opinión.