Fiol Matta, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se nos solicita que revoquemos la sentencia dictada por el Tribunal de Primera Instancia el 11 de agosto de 1995 que condenó a los apelantes a cumplir penas de reclusión por los delitos de asesinato en primer grado, robo e infracciones a los artículos 6 y 8 de la Ley de Armas.
Luego de un análisis de los escritos y documentos que obran en el expediente, a la luz del derecho aplicable y la jurisprudencia interpretativa, resolvemos que resulta procedente CONFIRMAR la sentencia apelada.
I
Los apelantes Miguel Arroyo Rivera y Omar Reyes Rodríguez fueron acusados de asesinato en *970 primer grado (Artículo 83 del Código Penal), robo (Artículo 173 del Código Penal) y violaciones a los artículos 6 y 8 de la Ley Armas de Puerto Rico. Se les imputó que el 31 de octubre de 1994, en Levittown, Toa Baja, dieron muerte con un arma de fuego a Antonio Burgos Figueroa mientras perpetraban el delito de robo. El juicio se celebró del 27 de marzo al 4 de abril de 1995 y los apelantes fueron declarados culpables de los delitos imputados. El 11 de agosto de 1995 fueron sentenciados a cumplir noventa y nueve (99) años de reclusión por el delito de asesinato en primer grado, doce (12) años de reclusión por el delito de robo y tres (3) y cinco (5) años de reclusión por las violaciones a la Ley de Armas, a ser cumplidas concurrentemente.
Inconforme con la determinación de culpabilidad, Miguel Arroyo Rivera acudió ante nos el 22 de agosto de 1995. De igual forma, el 25 de agosto de 1995, Ornar Reyes Rodríguez presentó su recurso apelativo. Ambos apelantes alegan que el Tribunal de Primera Instancia incidió al apreciar la prueba en su contra ya que, a su entender, la prueba de cargo no logró rebatir la presunción de inocencia que les cobijaba. Además, Miguel Arroyo Rivera imputa error al Tribunal de Primera Instancia al negarse a trasladar el caso según solicitado. Luego de varios incidentes procesales, este Tribunal ordenó la consolidación de ambos'recursos el 6 de marzo de 1996.
El 1 de julio de 1996, el Tribunal de Primera Instancia aprobó, con la anuencia del Ministerio Público, la exposición narrativa de la prueba presentada por los apelantes y ordenó que se elevaran los autos a este foro apelativo. Habiéndose recibido éstos, mediante resolución de 12 de agosto de 1996, ordenamos a los apelantes a cumplir con lo dispuesto por la Regla 16 (A) del anterior Reglamento de este Tribunal que es el aplicable al presente caso. Los apelantes presentaron sus alegatos el 13 y 18 de octubre de 1996 y el apelado, representado por el Procurador General, el 22 de noviembre de 1996.
II
Como primer señalamiento de error ambos apelantes plantean que no se demostró más allá de duda razonable que ellos cometieron los delitos por los cuales fueron encontrados culpables. Es norma reiterada que un tribunal apelativo no intervendrá con la apreciación y adjudicación de credibilidad del juzgador de los hechos en ausencia de prueba de que éste haya actuado con pasión, prejuicio, parcialidad o error manifiesto al aquilatar la prueba desfilada. En ausencia de esas circunstancias la determinación del juzgador sobre la credibilidad de los testimonios es acreedora de gran deferencia por parte del foro apelativo. Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986). Sin embargo, también se ha resuelto que, a diferencia de la adjudicación de credibilidad, la determinación de que la prueba creída por el juzgador demuestra la culpabilidad del acusado más allá de duda razonable no es una cuestión de hecho y sí de derecho y, por tanto, revisable como tal. Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Pagán Díaz, 111 D.P.R. 608, 620 (1981).
En cuanto al quántum de prueba necesario en un proceso criminal, es de todos conocido que el estado tiene que presentar prueba suficiente que establezca más allá de toda duda razonable cada uno de los elementos del delito. Véase Pueblo v. Sánchez Molina, _ D.P.R. _ (1993), Op. de 12 de noviembre de 1993, 93 J.T.S. 140. Por tanto, nos corresponde como foro apelativo revisar si la prueba presentada ante el foro apelado, creída como lo fue, es suficiente como cuestión de derecho, para que se configuren los elementos de los delitos imputados y se demuestre más allá de duda razonable la culpabilidad de los acusados.
En el juicio, la prueba de cargo descansó mayormente en los testimonios directos de la principal testigo de cargo, Marilyn González Gómez, secretaria del consultorio frente al cual asesinaron a Burgos y el de Héctor Urdaneta, agente investigador de los hechos.
No hay controversia en cuanto a que el testimonio de Marilyn González Gómez vinculó inequívocamente a los apelantes con la comisión de los delitos imputados. Dicha testigo declaró que para el día de los hechos trabajaba como secretaria en el consultorio del Dr. Valeriano Alicea ubicado en Levittown. Declaró además, que como a las 3:30 de la tarde se encontraba en el interior del consultorio y observó a través de unos cristales que dos personas se habían acercado a Antonio Burgos Figueroa, quien fungía como guardia de seguridad del consultorio y se encontraba afuera del mismo frente a los mencionados cristales. Describió a una de estas personas como un hombre alto, trigueño y que llevaba en su cabeza una gorra blanca. La segunda persona la describió como un hombre de baja estatura, blanco y que tenía en su mano un arma de fuego. Observó además como el *971 hombre alto forcejeó con Burgos y como el hombre de baja estatura disparó contra Burgos. Testificó que pudo observar que el hombre de baja estatura disparó nuevamente contra Burgos. La testigo indicó que corrió a esconderse y continuó escuchando varias detonaciones adicionales y casi inmediatamente volvió a mirar hacia fuera del consultorio y vio que los dos hombres corrían para retirarse del lugar. Estimó que el incidente se prolongó por espacio de 20 a 25 segundos. Al salir del consultorio observó a Burgos herido en el piso y sin el revólver que portaba. ENP, págs. 67-117.
La defensa confrontó a la testigo con la discrepancia entre la descripción del acusado Arroyo Rivera que hizo en corte y la descripción que aparecía en el informe policíaco. La discrepancia consistía en que mientras en corte la testigo decía que se trataba de un hombre blanco, en el informe del agente investigador lo describió como un hombre trigueño. Aunque la testigo admitió no recordar la descripción dada al agente investigador el día de los hechos, se mantuvo firme al señalar que se trataba de un hombre blanco y de baja estatura e identificó en corte al apelante Arroyo Rivera como ese hombre blanco y de baja estatura que disparó contra Burgos. ENP, págs. 67, 91.
Por su parte, el agente investigador declaró que llegó a la escena del crimen entre las 4:00 y las 4:30 de la tarde del 31 de octubre de 1994. Luego de investigar la escena de los hechos procedió a entrevistar a la testigo Marilyn González Gómez, quien le indicó lo ocurrido y ofreció la descripción física de los que cometieron el crimen. Señaló que Marilyn González Gómez le describió a los autores del crimen como un hombre de baja estatura, blanco, pelo rizo y ojos claros y otro alto que llevaba una gorra blanca y trigueño. ENP; pág. 13. Confrontado por la defensa con la discrepancia entre su testimonio y su informe escrito, señaló que se confundió, cuando preparó su informe ese mismo día poco antes de las 11:00 p.m. El error consistió en confundir la descripción que hiciera la señora María Cruz Sánchez, quien alegó que vio a dos muchachos pasar frente a su residencia a la hora en que ocurre el crimen, con la descripción que hiciera la testigo Marilyn González Gómez. Según su testimonio en corte, aunque Marilyn describió a uno de los sujetos como blanco, al redactar su informe esa misma noche escribió que Marilyn lo había descrito como trigueño, conforme lo había descrito la señora Cruz Sánchez. Id., págs. 17-18. Continuó declarando que días después de los hechos fue asignado como el agente encargado de esclarecer el crimen y volvió a entrevistar a Marilyn González Gómez. Un poco después, la llamó para informarle que tenía unos sospechosos y la citó para realizar una rueda de detenidos (line-up) el 14 de noviembre de 1994 en el cuartel del CIC de Bayamón. Testificó que la rueda se realizó y allí Marilyn identificó a ambos apelantes como los autores del crimen perpetrado el 31 de octubre de 1994. Id., págs. 22-23. El testimonio del agente básicamente fortaleció la versión de Marilyn, confirmando ciertos detalles del testimonio de ésta.
Terminado el Ministerio Público, la defensa presentó su prueba consistente en las declaraciones de María Martínez Rodríguez y María Cruz Sánchez. La señora Martínez Rodríguez se presentó como defensa de coartada. El testimonio de la testigo María Cruz Sánchez se utilizó para impugnar la identificación de los apelantes que hiciera la testigo de cargo principal, Marilyn González Gómez.
María Martínez Rodríguez declaró que era vecina del apelante Arroyo Rivera. Señaló que el 31 de octubre de 1994 llegó a su casa a eso de la 1:00 de la tarde y se puso a cocinar. Luego de ello, como entre las 3:00 y 3:15 de la tarde fue a la casa de Arroyo Rivera y le llevó de lo que había cocinado. Declaró que Arroyo Rivera se encontraba en el balcón de su residencia. A preguntas del Ministerio Público reconoció que no solía llevarle comida al apelante. Testificó que recordaba la hora aproximada porque el reloj de su residencia da campañadas cada media hora y que recordaba la fecha puesto que se trataba del día de "halloween". ENP, págs. 146-157. La segunda testigo de la defensa, María Cruz Sánchez, declaró que vivía cerca del consultorio médico frente al que ocurrieron los hechos. Declaró que escuchó unas detonaciones, se tiró al piso y al levantarse observó a dos hombres mientras pasaban por la calle frente a su residencia. Uno de ellos lo describió como de baja estatura, trigueño, tosco y llevaba un arma de fuego en su mano y el otro era blanco, alto y "ni gordo ni flaco". ENP, págs. 159-66. Reconoció que no podía señalar que las personas que vio pasar frente a su casa tuviesen alguna relación con lo ocurrido frente al consultorio. Id., pág. 166. Señaló además, que se encontraba muy nerviosa durante el incidente. Id., pág. 162. Finalmente señaló que los acusados no eran las personas que ella observó que pasaron frente a su casa el día del crimen. ENP, pág. 164.
Como puede advertirse, la prueba desfilada versa sobre todos y cada uno de los elementos exigidos por nuestro ordenamiento penal para configurar los delitos de asesinato en primer grado, robo e *972 infracción a la Ley de Armas. Sólo era necesario que el juzgador determinara su credibilidad. Es evidente que al ejercer esta facultad, el Tribunal de Primera Instancia determinó que el testimonio de Marilyn González Gómez le merecía credibilidad y que dicho testimonio era suficiente para sostener su fallo. Reiteradamente se ha establecido que "la evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho." Regla 10 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10; Pueblo v. Maisonave Rodríguez, _ D.P.R. _ (1991), 91 J.T.S. 67, a la pág. 8838; Pérez v. Acevedo Quiñones, 100 D.P.R. 894 (1972). Además, que un testigo incurra en contradicciones en torno a detalles de los hechos no impide que se le de crédito a su testimonio, cuando no surge de éste nada improbable o increíble. Pueblo v. Arroyo Núñez, 99 D.P.R. 842 (1971). En el presente caso, a excepción de que al apelante Arroyo Rivera se le describiera como trigueño o blanco, detalle de por sí relativo, nada hay en el testimonio de Marilyn González Gómez que resulte inverosímil, increíble o que obligue a descartarlo completamente.
En cuanto al quántum de prueba requerido, reiteradamente se ha dispuesto que aunque la culpabilidad de un acusado tiene que ser probada más allá de duda razonable, "ello no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón". Pueblo v. Pagán Santiago, 131 D.P.R. _ (1992), 92 J.T.S. 56, a la pág. 9480; Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760 (1985).
Concluimos, luego de un detenido y minucioso examen de la extensa exposición narrativa de la prueba presentada ante el foro apelado, que la evidencia presentada en el juicio y creída por el juzgador de los hechos fue suficiente en derecho para sostener las convicciones decretadas contra los apelantes.
Los apelantes centran su ataque en su identificación como los autores de los hechos imputados. En sus respectivos escritos señalan que su identificación estuvo rodeada de tales contradicciones e irregularidades que resulta viciada y de dudoso valor probatorio. Su tesis descansa en tres aspectos. El primero de ellos es la alegada contradicción entre el testimonio en corte de la testigo de cargo, Marilyn González Gómez y el informe policial preparado por el agente que investigó la escena de los hechos. Esto, a su juicio, crea dudas en torno a la identificación de los apelantes, lo que a su vez impide que pueda concluirse que la prueba de cargo rebatió la presunción de inocencia que les cobijaba. En segundo lugar, imputan sugestividad en la identificación de los apelantes que hizo Marilyn González Gómez durante la rueda de detenidos y, por último, cuestionan la oportunidad que tuvo la mencionada testigo de observar los hechos sobre los que testificó. Sin embargo, una evaluación integral de la prueba sostiene la determinación del juez de instancia.
El Tribunal de Primera Instancia encontró probado como cuestión de hecho que la testigo tuvo la oportunidad de observar a los apelantes, que prestó atención a lo acontecido frente al consultorio y que mostró seguridad en la identificación de los apelantes. Es de rigor señalar, que su testimonio se nutre de su conocimiento personal de los hechos y en nada depende del mencionado informe del agente investigador. Coincidimos con el foro apelado en que los hechos probados conforman fielmente los elementos elaborados por la jurisprudencia para determinar la confiabilidad de la identificación. Véase Pueblo v. Rivera, _ D.P.R. _ (1994), 94 J.T.S. 150, a la pág. 509. La discrepancia entre el testimonio de la testigo principal de cargo y el informe, por sí sola, no vicia la identificación al grado de no hacerla confiable. Id., pág. 510.
No obstante, los apelantes descansan en dicha discrepancia para inferir que la identificación en corte estuvo viciada por una identificación sugestiva durante la fase investigativa del proceso. Para sostener su contención aducen que, contrario a lo dispuesto por la Regla 252.1 de las de Procedimiento Criminal, 32 L.P.R.A. Ap. II, R. 252.1, al citar a Marilyn González Gómez se. le indicó que se tenían dos sospechosos "que habían cometido estos hechos y otros robos por el sector", y además, que "todos los integrantes de la rueda de confrontación[,] excepto el apelante[,] eran policías" del mismo cuartel donde se celebró la rueda, lo cual, a su entender, refleja la sugestividad de la identificación. Alegato del apelante Arroyo Rivera, pág. 14.
En primer término, cabe subrayar que se ha señalado que el hecho de que se le notifique a aquél *973 que habrá de participar en la identificación mediante rueda de detenidos, de que se cuenta con algún sospechoso, por sí sólo, no vicia de nulidad la rueda celebrada. Esto es así, puesto que se ha reconocido que una persona de inteligencia promedio de ordinario pensará que dentro, del grupo de personas que van a participar en la rueda debe haber algún sospechoso. Pueblo v. De Jesús Rivera113 D.P.R. 817, 823 (1983); Pueblo v. Rivera Navarro, 113 D.P.R. 642, 649-50 (1982).
En cuanto a la alegación de los apelantes de que el uso de policías en la ruedas de detenidos imprimió tal grado de sugestividad a la identificación que vició su validez o coúfiabilidad, cabe señalar que nuestro Tribunal Supremo ha descartado la sugestividad o insinuación como elemento que por sí sólo obligue a la exclusión de la prueba de identificación. Pueblo v. Peterson Pietersz, 107 D.P.R. 172, 183 (1978). La norma vigente hace depender la confiabilidad de la identificación de la totalidad de las circunstancias, aun cuando el procedimiento de confrontación haya sido sugestivo. Id., a la pág. 183. Así, será admisible evidencia de identificación antes del juicio que aunque haya sido obtenida mediante un procedimiento sugestivo, "tiene suficientes indicios de confiabilidad, a la luz de la totalidad de las circunstancias". Ernesto L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Tomo I, Sec. 5.3, pág. 266, Ed. Forum (1991).
Los siguientes factores principales, que deben guiar la consideración de posibles errores de identificación, han sido reiterados por el Tribunal Supremo desde su adopción en Pueblo v. Peterson Pietersz, supra, a la pág. 183:

"1. la oportunidad del testigo de observar al criminal en el momento de la comisión del delito,

2. el grado de atención del testigo,

3. la precisión de la anterior descripción del criminal por el testigo,

4. el nivel de certeza demostrado por el testigo en la confrontación, y

5. el tiempo transcurrido entre el crimen y la confrontación."

De esta forma, nuestro Tribunal Supremo adopta los criterios elaborados por el Tribunal Supremo federal en una serie de casos que culminan en Neil v. Biggers, 409 U.S. 188 (1972) y Manson v. Braithwaite, 432 U.S. 98 (1977). El profesor Chiesa ha sugerido que los elementos de sugestividad presentes en la identificación anterior al juicio "deben ser pesados al lado del efecto combinado de estos cinco factores y el resultado del balance determinará la admisión o exclusión de la evidencia." Id., a la pág. 267.
Ahora bien, conviene aclarar que la admisión de un testimonio en corte que identifique al acusado no depende de la admisibilidad de la prueba de identificación extrajudicial. Lo que se intenta más bien es evitar que procedimientos extrajudiciales de carácter sugestivo puedan conducir a identificaciones judiciales erróneas. Sobre este particular el Tribunal Supremo expresó en Pueblo v. Rey Marrero, 109 D.P.R. 739, 748, (1980):

"Es posible... que la identificación durante el proceso investigativo vicie de tal manera los derechos del acusado que [éste] no pueda defenderse de la identificación que de él se haga en el acto del juicio. Ello sucedería si esa identificación posterior es el producto de la sugestividad que hubiese perneado de invalidez la identificación en la etapa investigativa. Pero no siempre ese es el resultado, y... la determinación de si se ha violado el debido proceso dependerá de la totalidad de las circunstancias que rodearen el procedimiento de identificación."

No obstante, es de rigor señalar que la identificación judicial no es fácilmente suprimióle ni aun en los casos en que haya sido precedida por alguna identificación extrajudicial viciada. Una vez admitida la prueba de identificación lo que resta es adjudicar, como cuestión de hecho, la credibilidad del testimonio, lo que a su vez dependerá también de la confiabilidad que pueda adscribirse a la identificación, sobre la base de la totalidad de las circunstancias particulares que rodearon la misma. El Tribunal Supremo ha dicho que la presencia de sugestividad en la prueba admitida obliga al juzgador a pasar juicio sobre la confiabilidad del testimonio y determinar si éste ha sido maculado por *974 la conducta extrajudicial sugestiva. Pueblo v. Peterson Pietersz, supra, a la pág. 184. Como corolario de lo anterior se ha concluido que "la conclusión del juzgador de los hechos sobre este punto tiene todo el respeto y validez que en apelación se extiende a las determinaciones de hechos", lo que a su vez, restringe "la intervención del foro apelativo frente a la mejor posición del juez de instancia para adjudicar credibilidad."Id. alas pág. 184-85.
A la luz de las circunstancias particulares del presente caso, es muy escasa la probabilidad de que la identificación producida durante la rueda de detenidos hubiera conducido a una identificación errónea de los apelantes. Los hechos ocurrieron durante el día, justo frente al lugar donde se encontraba la testigo Marilyn González Gómez. Además, los asaltantes no cubrieron sus rostros. La testigo prestó atención a lo acontecido frente al consultorio y mostró seguridad en la identificación de los apelantes. Aún más, los apelantes no han demostrado que durante el proceso de identificación se le haya sugerido persona alguna a la testigo. Tampoco han demostrado el propósito deliberado del Estado de influenciar indebidamente en el proceso de identificación extrajudicial ni que se lesionaran sus derechos, al extremo de invalidar su posterior identificación en corte, porque algunos de los integrantes de las ruedas de detenidos fueran policías, hecho que no se probó que fuese de conocimiento de la testigo. Más bien, puede advertirse de la fotografía de la rueda de detenidos que los apelantes estuvieron acompañados de cuatro personas de características físicas y vestimentas sustancialmente similares. En fin, no nos han convencido de que la información que recibió la testigo durante la fase investigativa menoscabó la confiabilidad de la identificación en corte a tal punto que debiera descartarse.
No podemos perder de vista que el juzgador de instancia pudo apreciar el comportamiento de la testigo Marilyn González Gómez y la forma en que declaró, así como la naturaleza o carácter de su testimonio, previo a otorgarle la credibilidad que en efecto le otorgó. Regla 44 (B) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 44(B). Los apelantes no le imputan al Tribunal de Primera Instancia haber actuado movido por pasión, prejuicio o parcialidad. Tampoco han demostrado que estemos ante un error manifiesto que nos obligue a concluir que la apreciación del juzgador no resulta razonable. En fin, a pesar de que la determinación que hace el juez de instancia sobre la credibilidad de los testigos no goza de inmunidad apelativa, sabemos que en ausencia de los factores señalados, la misma merece gran deferencia y no debe alterarse a nivel apelativo a menos que no encuentre apoyo en la prueba presentada o no represente el balance más racional de la totalidad de la evidencia que tuvo ante sí el juzgador. Sanabria v. Sucn. González, 82 D.P.R. 885 (1961).
III
El apelante Arroyo Rivera alega que el Tribunal de Primera Instancia incidió en la apreciación de la prueba de coartada. La defensa de coartada "consiste esencialmente en la alegación de que el acusado no se encontraba en el lugar del crimen en la fecha y la hora en que se supone se cometió". Pueblo v. Rosario Reyes, _ D.P.R. _ (1995), Res. de 7 de junio de 1995, 95 J.T.S. 74 (1995); Pueblo v. Tribunal Superior, 101 D.P.R. 133, 138 (1973). Es norma reiterada que "el juzgador de los hechos tiene facultad para dar a la prueba de coartada el valor probatorio que estime necesario". Pueblo v. De Jesús Rivera, 113 D.P.R. 817, 826 (1983). Cabe destacar que no se requiere que el Ministerio Público ofrezca prueba de refutación. Pueblo v. Rosario Reyes, _ D. P.R. _ (1995), 95 J.T.S. 74, a la pág. 942. La señora Carmen María Martínez, vecina del apelante Arroyo Rivera, declaró con el propósito de establecer la coartada. El juzgador no le adjudicó credibilidad o entendió que su versión no era incompatible con la posibilidad de que el apelante hubiese participado de los hechos imputados. Ya hemos dicho que en ausencia de algún error manifiesto, de pasión, prejuicio o parcialidad no existe fundamento en dereho para intervenir con esa determinación.
IV
El apelante Miguel Arroyo Rivera imputa error al Tribunal de Primera Instancia por negarse a trasladar el caso a otro distrito judicial. Alega que no se sentía confiado de obtener un juicio justo e imparcial en el Tribunal de Primera Instancia de Bayamón, porque la víctima había trabajado durante muchos años como alguacil en ese Centro Judicial; por la "conmoción" que el caso había provocado en la comunidad de Bayamón; por la publicación de una noticia en un diario de circulación general en Puerto Rico y por haber llegado a sus oídos que se referían a él como "la persona que mató a Burgos".
El traslado de una causa criminal a otra sala está gobernado por la Regla 81 de las de *975 Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 81. El Tribunal Supremo ha expresado que la concesión de un traslado no debe hacerse livianamente y el peso de demostrar su procedencia recae sobre quien lo solicita. Pueblo v. Rodríguez Zayas, _ D.P.R. _ (1995), 95 J.T.S. 3, a la pág. 569. En todo caso la concesión del traslado descansa en la sana discreción del tribunal. Pueblo v. Escobar, 55 D.P.R. 505 (1939).
El presente caso se vio por tribunal de derecho. Por ende, no se trata de que candidatos potenciales a jurado no estuviesen en condiciones de juzgar la causa imparcialmente porque la víctima se hubiere desempeñado como alguacil. Tampoco que hubiera candidatos que conocieran a la víctima. Mucho menos se probó que la publicación de una noticia en un diario fuera de tal naturaleza inflamatoria que anulase toda posibilidad de constituir un jurado imparcial. Lo único que se presenta es la inferencia de que el juez de instancia no estaba apto para actuar imparcialmente puesto que, según alega el apelante, el que la víctima haya trabajado en el Centro Judicial de Bayamón "tiene que haberle afectado". La génesis de esta inferencia son las expresiones que alegadamente vertiera el juez al pronunciar la sentencia, a los efectos de que hubiese preferido que el caso se ventilara por jurado. Es la contención del apelante que estas expresiones no sólo demuestran que el caso debió ser trasladado sino que el juez tenía duda sobre la culpabilidad del apelante. No podemos refrendar el alcance que pretende el apelante adscribirle a las palabras del juez sentenciador. Nos parece improcedente tal conjetura, más aún cuando la prueba de cargo sostiene el fallo de culpabilidad. Por eso, era innecesario transcribir el mencionado comentario según solicitó el apelante. En fin, el Tribunal de Primera Instancia no cometió el error imputado.
Por los fundamentos antes consignados se CONFIRMA la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 98 DTA 64
1. Véase discusión al respecto en Olga E. Resumil, Derecho Procesal Penal, Tomo I, Sec. 13.14, págs. 340-41, Equity Publishing Co. (1990).
2. De las actas preparadas se desprende que en la rueda de detenidos para identificar al apelante Arroyo Rivera los cuatro integrantes que acompañaban al apelante eran policías. En la rueda correspondiente al apelante Reyes Rodríguez, a lo sumo, dos integrantes eran policías.
3. Sobre la solicitud de traslado, conviene señalar que una vez ésta se deniega los apelantes optaron por ver el caso ante jurado para poco más tarde solicitar juicio por tribunal de derecho. Minuta de 28 de junio de 1995. Nunca recurrieron de la negativa de traslado ante el foro apelativo.