EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RO-BERTO SUÁREZ SÁNCHEZ, acusado y apelante.

*Número:* CR-74-30          *Resuelto:* 14 de noviembre de 1974

*Benigno Alicea Alicea,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Adolfo J. Vila, Procurador General Auxiliar,* abogados de El Pueblo.

—O—

EN MOCIÓN DE RECONSIDERACIÓN

21 de enero de 1975

*Myriam Naveira de Rodón, Procuradora General* y *Adolfo J. Vila, Procurador General Auxiliar,* abogados de El Pueblo; *Benigno Alicea Alicea,* abogado del apelante.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Exige este caso la expresión de las normas que deben regir el proceso de identificación cuando el procedimiento que se emplea es el de exponer al sospechoso a solas a la vista de la persona que ha de verificar su identidad.

Al apelante se le sentenció por tribunal de derecho a dos años de cárcel en total por infracción de los Arts. 6 y 8 de la Ley de Armas, 25 L.P.R.A. secs. 416 y 418, consistentes en poseer y portar un arma de fuego cargada sin la correspondiente licencia.

La prueba de cargo consistió en el testimonio de un policía estatal y de un agente del C.I.C. El primero, el único testigo ocular, declaró que al entrar alrededor de las 11:30 A.M. en su vehículo de patrulla por una calle de Hato Rey vio a un individuo que corría con un revólver en la mano derecha. Venía

de frente, pero se desvió, persiguiéndolo el policía infructuosamente por unos cinco minutos. El testigo vio al apelante, continuó declarando, a una distancia de quince a veinte pies, por un término de tiempo que calculó en "minuto y pico o dos." (T.E. pág. 27.) Al no poder apresar a quien huía, el policía averiguó que un tercero había sido herido mortalmente de bala en los alrededores. Se le llevó al hospital y de allí el policía telefoneó al Escuadrón de Homicidios e informó lo expresado, añadiendo que la persona que él había estado persiguiendo vestía pantalón y boina gris y camisa amarilla de manga larga (T.E. pág. 32). También describió a tal persona, según el declarante, como trigueña y de cinco pies con seis o siete pulgadas de estatura.

Al día siguiente se llama al policía a las oficinas del C.I.C., como a las once o doce del mediodía, y se le presentó a un solo individuo, el apelante, vestido exactamente igual que como el policía declaró haberlo visto. (T.E. págs. 21–22.) El policía lo identificó como la persona perseguida por él.

El segundo testigo de cargo declaró que al día siguiente de los hechos, alrededor de dos horas antes de enfrentarse el policía con el apelante en las oficinas del C.I.C., recibió la descripción de marras. Se personó inmediatamente en el sitio cercano a los hechos, vio al apelante vestido del modo informado, exactamente igual que el día anterior, lo arrestó y llamó al policía concernido para identificarlo.

En la declaración prestada por el policía ante el fiscal, sin embargo, no se hizo mención alguna del color de la camisa que llevaba el sospechoso, ni del pantalón y la boina, ni de su estatura. Lo que describió fue el revólver. (T.E. págs. 33–34.) La defensa solicitó sin éxito la eliminación del testimonio del policía por razón del método de identificación empleado. A pesar de ello, el Ministerio Público no presentó prueba alguna demostrativa de la necesidad de prescindir en este caso del método de identificación por rueda de detenidos.

El Tribunal Supremo de los Estados Unidos ha advertido que el procedimiento de exposición unipersonal ha sido tema de amplia crítica. *Stovall* v. *Denno*, 388 U.S. 293, 302 (1967). Véanse: Frankfurter, *The Case of Sacco and Vanzetti* 31–32; Wall, *Eye-witness Identification in Criminal Cases* 26–40. Se ha considerado de hecho este método como el más sugestivo que pueda emplearse por la policía para identificar a un sospechoso. Note, *Pretrial Identification Procedures*, 55 Minn. L. Rev. 779, 782 (1971), citando a Wall, *supra*, escolio 1, pág. 28.

En *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249, 251–252 (1967), citando de *People* v. *Ballot*, 233 N.E.2d 103 (N.Y. 1967), expresamos que:

"En ausencia de circunstancias que obliguen a recurrir a tal procedimiento, la práctica de que un testigo secretamente observe, para propósitos de identificación, solamente al único sospechoso que la policía tiene bajo su custodia por el crimen, puede ser 'tan innecesariamente sugestiva y conducente a una identificación errónea' e irreparable que conlleve a una negación del debido proceso de ley."

Señalamos también en *Gómez Incera*, supra, 257, que la determinación de si se violentó el debido proceso de ley depende de la totalidad de las circunstancias que rodean el caso específico, *Simmons* v. *United States*, 390 U.S. 377 (1968), pero recomendamos, para mayor confiabilidad de la identificación, que hasta que pudiesen enmendarse las reglas se utilizase el procedimiento de rueda de detenidos.

En casos posteriores hemos recalcado la regla de que tan solo cuando existan circunstancias que exijan su uso debe acudirse a la identificación del sospechoso a solas y prescindirse de presentarlo en rueda de personas de vestimenta y características parecidas. *Pueblo* v. *Montañez Ramos*, 100 D.P.R. 911, 924 (1972). En *Pueblo* v. *Tanco*, 101 D.P.R. 75 (1973), revocamos una convicción por no demostrar el récord que existiesen circunstancias que justificasen la utilización del método

de exposición del sospechoso a solas en vez de en rueda de detenidos. En *Pagán Hernández* v. *Alcaide*, 102 D.P.R. 101 (1974), afirmamos, respecto a la identificación por fotografías esta vez, que "dada la escasa confiabilidad de por sí de la identificación por fotografías, puede dependerse exclusivamente de tal procedimiento tan solo en situaciones donde sea imperioso su uso."

*Stovall* y casos análogos han motivado en Estados Unidos, conforme el estudio del juez Nathan R. Sobel, que "La identificación por exposición del sospechoso a solas o por muestra de fotografías, que era antes común y en efecto la norma, ha abandonado la escena por completo. La rueda de detenidos constituye hoy la regla." Sobel, *Eye-Witness Identification*, 1972, pág. 163. Sobel señala también las pautas derivables de la jurisprudencia respecto al peso de la prueba en estos casos. El acusado lleva el peso de demostrar un caso *prima facie* de violación al debido proceso de ley, peso que se descarga al probar que el método de identificación seguido fue el de su exposición a solas. Le corresponde entonces al fiscal demostrar qué circunstancias especiales requerían el uso de tal método. Sobel, *op. cit.* 154–155, 55 Minn. L. Rev. 779, 794 (1971), *supra*. Esta regla se desprende, también, por supuesto, de nuestras decisiones en *Tanco, Pagán Hernández* y casos anteriores.

Nuestra Asamblea Legislativa ha aprobado recientemente legislación sobre esta materia, reglamentando la identificación por rueda de detenidos y fotografías, Ley Núm. 199 de 23 de julio de 1974. Según el informe de la Comisión de lo Jurídico Penal del Senado, emitido el 27 de mayo de 1974, "Las normas contenidas en la presente legislación intenta [*sic*] reducir a un mínimo los peligros de sugestibilidad inherentes a los procesos de identificación anterior [*sic*] al juicio en el procedimiento criminal." La ley no pretende establecer "en qué ocasiones debe efectuarse la rueda de detenidos, ya que ello dependerá de las circunstancias de cada caso en particular.

Dicha determinación la deberá hacer el policía o el fiscal de acuerdo a las normas jurisprudenciales." Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes, junio de 1974. Tales normas jurisprudenciales se han reseñado aquí, así como en el propio informe del Consejo sobre la Reforma de la Justicia referente a la Policía, donde se señala que sólo por circunstancias extraordinarias y fuera del control de la Policía podrá abandonarse el procedimiento de rueda de detenidos. Informe de 15 de diciembre de 1973 de la Comisión para el Estudio de la Policía al Consejo sobre la Reforma de la Justicia en Puerto Rico, pág. 146.

■ En el caso de autos el fiscal no demostró qué circunstancias extraordinarias, fuera del control de la Policía, hacían imperioso el uso del método de identificación empleado, omisión que constituyó una violación en este caso del debido proceso de ley. Había transcurrido un día desde la fecha de los hechos. Podía a todas luces formarse una rueda de personas con vestimenta y características corporales parecidas a las del sospechoso. Esto era especialmente aconsejable y necesario en este caso, donde la prueba de cargo alcanza los linderos de la incredulidad: un hombre que corre por calles pobladas revólver en mano; que al topar con un carro de patrulla sigue corriendo de frente hacia él por un minuto o dos antes de desviarse; su captura prácticamente en forma instantánea, tan pronto el C.I.C. se entera al día siguiente de su descripción; su prolongada permanencia hasta el momento de su captura en los alrededores de lo ocurrido; su continuado uso de la misma ropa llamativa al día siguiente de los hechos; y, para macular aún más el proceso de identificación, la omisión en la declaración del policía de los datos esenciales en que se basó el arresto.

*Se revocará la sentencia dictada por el tribunal de instancia.*

El Juez Asociado, Señor Díaz Cruz, disiente en opinión separada, con la cual concurren los Jueces Asociados, Señores Rigau y Martín.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz en la cual concurren los Jueces Asociados Señores Rigau y Martín.

San Juan, Puerto Rico, a 14 de noviembre de 1974

La Reforma Judicial a que alude la opinión circulada tiene como motivación principal dar algún alivio a nuestra sociedad del implacable azote del crimen en nuestras calles y hogares. No creo que deba invocarse para justificar la absolución del apelante en este caso.

La transcripción de la evidencia demuestra que hubo suficiente prueba de identificación y que la misma mereció crédito al juzgador. El policía ve al acusado venir de frente hacia él con un revólver en la mano, lo observa por un minuto y cuando el apelante se desvía para evadirlo lo persigue por varias calles del Caserío San José hasta que hubo de abandonar la persecución porque alguien le informó que en otro sitio ha caído una persona gravemente herida de bala. La observación por el policía, especialmente entrenado para retener la figura del identificado tiene lugar en buena visibilidad, a las 11:30 de la mañana. Trasmitida su descripción al C.I.C. se arrestó al apelante al día siguiente y el policía lo identificó en el cuartel al verlo. Habían transcurrido sólo 24 horas entre su primera observación y ésta. En *Pueblo v. Gómez Incera*, 97 D.P.R. 249 (1969), se sostuvo la identificación hecha dos días después del delito por mujeres cuya primera impresión de los asaltantes fue captada en crisis histérica, encañonadas y bajo amenaza de muerte.

Aparte de que la opinión recoge doctrinas muy difundidas en nuestro medio, el caso en sí es sórdido y corriente; no mueve la conciencia hacia una reivindicación de nada.

El acusado renunció al jurado, no presentó prueba de defensa alguna por lo que no controvirtió la del Estado, y para el juez sentenciador no fue acreedor ni siquiera al beneficio de sentencia concurrente pues como rara vez ocurre las impuso consecutivas. La impugnación de identificación es pura calistenia legalista del tipo que es capaz de derrotar la justicia hecha por el Juez Superior, si no se descubre su superficialidad.

Lo que el juez ponente llama signos de incredulidad en la prueba son todo lo contrario, circunstancia diaria y rutina de existencia en la subcultura de los nuevos vándalos a saber: un hombre corre por la calle con un revólver en la mano (hace algunos meses los autores de un asalto entraron a un hotel exhibiendo las armas largas de su oficio); corrió hacia el policía hasta que se dio cuenta de que éste era un agente de orden, entonces empezó a huir y de ahí la persecución; la captura instantánea es demostración de diligencia por los agentes de orden público y reduce, no aumenta, el factor de error en la identificación; la prolongada permanencia (24 horas) en el sitio de los hechos se explica porque el acusado residía allí mismo en el Caserío San José, Edificio 7, Apartamento 301; y el uso continuado de la ropa (pantalón y boina gris y camisa amarilla de manga larga) es usanza común pues hay quien luce la combinación de su agrado hasta que se deshilacha encima.

La función trascendental de este Tribunal al mantener un régimen de derecho y de justo equilibrio entre los transgresores del orden social y el pueblo hostigado excluye nuestra intervención con detalles menores de evidencia para desautorizar nuestros jueces de primera instancia. La identificación de criminales no ha de ser manejada por normas de laboratorio constitucional más allá del debido proceso de ley a que es acreedor tanto el delincuente como la sociedad que lo sufre.

Confirmaría la sentencia apelada.

—O—

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

San Juan, Puerto Rico, a 21 de enero de 1975

Hemos acogido la moción de reconsideración de la Procuradora General fundada en los criterios mantenidos por la opinión disidente, y en riguroso ulterior examen de los hechos y del derecho aplicable, reconsideramos. Dos elementos principales impulsan esta modificación de criterios: la confiabilidad de la identificación del acusado en este caso y la deferencia a la facultad estimativa de la prueba por el juez de instancia.

La rueda de detenidos, valioso método de identificación regulado hoy por la Regla 252 de Procedimiento Criminal, según estatuida por Ley Núm. 199 aprobada el 23 de julio de 1974, es un instrumento en reserva para usarse cuando la confusión, el correr del tiempo, la difícil percepción, el recuerdo tenue, la inseguridad del testigo, o cualquier otro factor en evaluación lógica enerve la razonable certeza exigida de quien señala al autor del delito. En *United States* v. *Wade*, 388 U.S. 218, transcurren más de seis meses entre el robo del banco por un desconocido con tiras de papel engomado a cada lado del rostro, y su arresto, y a pesar de ello el caso fue devuelto al tribunal de instancia para que determinara si la identificación por los testigos en corte abierta era admisible; igual disposición se tomó en *Gilbert* v. *California*, 388 U.S. 263, un caso de pena capital, refiriéndolo al tribunal del estado para que resolviera sobre la admisibilidad de la identificación en juicio; y en *Stovall* v. *Denno*, 388 U.S. 293, siguiendo el principio de que el debido proceso de ley es circunstancial y pragmático, se sostuvo la identificación del supuesto asesino obtenida por el medio más sugestivo imaginable que resume así la opinión del Juez Brennan: "La señora Behrendt [herida por el asal-

tante que dio muerte a su esposo] estaba hospitalizada para cirugía en un esfuerzo por salvar su vida. La policía, sin dar oportunidad al sospechoso para obtener asistencia legal, hizo arreglos con el cirujano para que éste les permitiera traer al detenido a su cuarto de hospital al mediodía del 25 de agosto [el delito se cometió el 23 de agosto] que era el día siguiente a la operación quirúrgica. El sospechoso fue esposado a uno de cinco agentes de la policía, quienes acompañados de dos ayudantes del Fiscal de Distrito lo llevaron al hospital. El acusado era el único negro en la habitación. La señora Behrendt lo identificó desde su cama cuando uno de los policías le preguntó que si ese 'era el hombre' y luego que el acusado requerido por un policía repitió unas cuantas palabras para identificar su voz. En el juicio ninguno de los testigos pudo recordar las palabras usadas. La señora Behrendt y los policías declararon en el juicio sobre la identificación del acusado por ella en su cuarto de hospital y ella hizo una adicional identificación de dicho individuo en plena corte." Con esta identificación se confirmó una sentencia de muerte.

Es en los hechos y doctrina de *Wade, Gilbert,* y *Stovall,* supra, que busca apoyo la decisión de *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249 (1969), que no empece su tesis constitucional y su laudable preocupación con los riesgos de error en la identificación, termina sosteniendo como válida y constitucionalmente aceptable la hecha por dos mujeres confrontadas en el hogar de una de ellas por dos ladrones, encañonadas por una pistola mientras una de ellas atendía su hijo pequeño, a pesar de que al igual que en *Stovall,* a los dos días la policía le presenta a las damas para identificación únicamente al sospechoso Gómez Incera.

En el caso que nos ocupa la identificación se hizo por un policía que ve al acusado venir distraído y de frente hacia él con un revólver en la mano, lo observa por un minuto y cuando el apelante se desvía para evadirlo lo persigue por varias calles del caserío San José hasta que hubo de abandonar

la persecución porque alguien le informó que en otro sitio ha caído una persona gravemente herida de bala. La observación por el policía, especialmente entrenado para retener la figura del identificado tiene lugar en buena visibilidad, a las 11:30 de la mañana. Trasmitida su descripción al Cuerpo de Investigación Criminal se arrestó al apelante al día siguiente y el policía lo identificó en el cuartel tan pronto lo vio. Habían transcurrido sólo 24 horas entre su primera observación y ésta. (¹)

No consideramos que los 20 ó 25 minutos de terror a que estuvieron sometidas las mujeres en el caso *Gómez Incera,* estremecidas en su más honda fibra y afectadas en su discernimiento por los incontenibles reflejos de su instinto de conservación (y que aun así pudieron señalar con certeza al acusado) sean mejor medida de confiabilidad que el minuto de sereno enfrentamiento y la subsiguiente persecución del sujeto por el policía en este caso que extendió la captación visual de la figura del acusado.

El juez de instancia concluyó que en la suma de circunstancias de este caso es confiable y digna de crédito la identificación del acusado, (²) por lo que resultaba de todo punto innecesario recurrir a la rueda de detenidos. Su apreciación sostenida por la prueba ha de ser estimada por este Tribunal. La identificación de criminales no está exenta de la sabia norma que detiene y restrinje la intervención de los tribunales de apelación frente a la mejor posición del juez de instancia para adjudicar credibilidad debiendo suplantar

---

(¹) En *Pueblo* v. *Gómez Incera,* citado, se sostuvo la identificación hecha dos días después de cometido el delito, por mujeres cuya primera impresión de los asaltantes fue captada en crisis histérica, encañonadas y bajo amenaza de muerte.

(²) Toda la doctrina constitucional queda supeditada a las realidades circunstanciales en la expresión del Tribunal Supremo de los Estados Unidos al efecto de que "la alegada violación del debido proceso en el curso de una confrontación [para identificar] depende de la totalidad de las circunstancias que la rodean." *Stovall* v. *Denno,* 388 U.S. 293, 302.

sus determinaciones únicamente cuando no estén sostenidas por la prueba. En la aplicación de ese principio no se puede depender de matices, tonalidades y esmeros y sí de la realidad esencial, del signo conocible que en el proceso racional conduce al juez de instancia a la determinación que satisface su conciencia de juzgador de otro hombre.

Con la misma energía que hemos despejado de obstáculos procesales el juicio pleno a que tiene derecho todo acusado, rechazamos la extremada elaboración académica de principios de derecho sobre el filo de la incidencia criminal que tiene a nuestro pueblo agobiado en angustioso clamor por un sistema de justicia que también proteja su derecho a la libertad, a la vida y a la propiedad.

*Se dejan sin efecto nuestra opinión y sentencia de 14 de noviembre de 1974.*

*La sentencia apelada ha de ser confirmada.*

El Juez Asociado, Señor Irizarry Yunqué, emitió opinión disidente en la cual concurren el Juez Presidente, Señor Trías Monge, y los Jueces Asociados, Señores Dávila y Cadilla Ginorio. El Juez Asociado, Señor Negrón García, emitió un voto particular.

—O—

Opinión disidente emitida por el Juez Asociado Señor Irizarry Yunqué con la cual concurren el Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Dávila y Cadilla Ginorio.

San Juan, Puerto Rico, a 21 de enero de 1975

La norma que establecimos en *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969), no es una norma rígida que obligue a la formación de una rueda de confrontación en todos los casos en la etapa de identificación de un sospechoso. Citando *Stovall* v. *Denno*, 388 U.S. 293 (1967) y *Simmons* v. *United States*, 390 U.S. 377 (1968), señalamos en *Gómez Incera*, pág. 257, que si bien el no presentar al sospechoso en rueda de detenidos

puede violentar el debido proceso de ley, "la determinación de si se ha violado depende de la totalidad de las circunstancias que rodearon el procedimiento de identificación." Lo determinante, a mi juicio, de la validez de la identificación es la sugestividad que pueda haber en la identificación cuando se utiliza el método de exposición del sospechoso solo. Para preservar la pureza del procedimiento debe utilizarse la rueda de confrontación a menos que haya circunstancias que justifiquen desviarse de esta norma. La exposición del sospechoso solo debe ser la excepción y no la regla.

En el mismo caso de *Gómez Incera* entendimos que la identificación del acusado, aunque no se hizo en rueda de detenidos, no estuvo viciada de sugestividad. Y en los casos posteriores de *Pueblo* v. *Morales Romero,* 100 D.P.R. 436 (1972) ; *Pueblo* v. *Montañez Ramos,* 100 D.P.R. 911 (1972) ; *Pueblo* v. *Medina Jiménez,* 102 D.P.R. 300 (1974) y *Pueblo* v. *Rivera Vázquez,* 102 D.P.R. 758 (1974), resolvimos que bajo las circunstancias en cada uno de ellos hubo certeza en la identificación y ésta no estuvo viciada, aunque no se utilizara la rueda de confrontación como método de identificación.

Las circunstancias del caso ahora ante nos son distintas. Resulta para mí increíble que el sospechoso caminara distraídamente hacia el policía durante un minuto, de frente hacia él, con un revólver en la mano a plena luz del día. Pero en el supuesto de que así ocurriera, no me satisface la explicación de que no pudiera ser arrestado y que pudiera ser identificado. Obviamente si caminó hacia el policía durante un minuto, distraídamente, debió acercarse lo suficiente para que el policía lo arrestara, o la distancia que les separaba era tal que necesariamente no podía el policía observar sus facciones como para poderlo identificar al día siguiente, sin haberlo visto antes y conocerlo. Es evidente que en este caso el factor decisivo en la identificación fue la indumentaria del sospechoso—usaba pantalón y boina gris y camisa amarilla de manga larga— y no sus rasgos fisonómicos. Nada me parece más sugestivo

que presentarle a un testigo, para que diga si es la persona que él vio, a un individuo vestido exactamente igual que el descrito por el testigo. Aun en rueda de confrontación hubiese resultado el individuo presentádole a base de la indumentaria que vestía. Bajo las circunstancias de este caso, y precisamente por ser el testigo identificador un policía, el récord debió demostrar las razones para justificar que se prescindiera de la norma que establecimos en *Gómez Incera*. Los policías no están exentos de la norma. Me pregunto si el policía en este caso hubiese identificado con certeza al sospechoso, de entre varios individuos de similar contextura física, de estar todos vestidos de la misma manera.

Ciertamente es perturbador el auge que ha tomado el crimen, particularmente en su modalidad de atracos a mano armada en las vías públicas, la violación sexual de mujeres por desconocidos, los asesinatos mediante el uso de armas de fuego disparadas desde vehículos en movimiento, etc. Sin duda en esos casos, en que el malhechor está por breves instantes ante la percepción visual de su víctima y de testigos oculares, su identificación posterior se hace difícil. Es precisamente para proteger a personas inocentes sobre quienes puedan recaer sospechas que se impone una norma que asegure más allá de duda razonable la identificación del verdadero culpable. No podemos conjurar el mal aflojando los principios esenciales del debido proceso de ley que existen, no para proteger a los criminales y sí para impedir que los inocentes paguen por aquellos. Claro está que hay que proteger a la sociedad, pero esa protección no se consigue metiendo a la cárcel a personas inocentes. Ellas son parte de la sociedad que hay que proteger. La sociedad debe ser protegida de los malhechores y también debe ser protegida de la posible acción ilegal de los encargados de hacer cumplir sus leyes. Precisamente por lo furtiva de la aparición de los asaltadores, violadores y asesinos de moda debe redoblarse la vigilancia en la observación de los principios del debido proceso de ley.

Por entender que en este caso la prueba no demostró circunstancias fuera del control de la policía que justificaran prescindir de la rueda de confrontación como método de identificación, disiento de la opinión de la mayoría y rehusaría reconsiderar la opinión emitida por este Tribunal el 14 de noviembre de 1974. No veo razón para temerle a la celebración de ruedas de detenidos bajo los principios allí expuestos, cuando tales principios han recibido aceptación general en la mayoría de las jurisdicciones, habiendo constituido la norma en Puerto Rico aun en tiempos de España. Art. 369 de la Ley Española de Enjuiciamiento Criminal.

La sentencia del Tribunal de instancia debería revocarse.

—O—

Voto particular del Juez Asociado, Señor Negrón García.

San Juan, Puerto Rico, a 23 de enero de 1975

Por considerarla correcta, endoso la Opinión mayoritaria del Tribunal que en reconsideración confirma la sentencia dictada por el tribunal de instancia que determinó, bajo las circunstancias específicas de este caso, como confiable y digna de crédito la identificación del acusado, y por ende innecesario el que tuviera que recurrirse a la celebración de una rueda de detenidos.

Concluir lo contrario equivaldría a exigir irrestringida y automáticamente, con carácter de ritual en todo caso, la formación de una rueda de confrontación cuando se está interviniendo con un sospechoso, aprisionando los válidos fundamentos de *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249 (1969), en una rigidez y perspectiva histórica no contemplada.