Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
El apelante, Efraín Alejandro Solís, solicita la revocación de la sentencia dictada el 30 de octubre de 1998 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el dictamen en cuestión, el Tribunal declaró al apelante culpable de los delitos de homicidio, 33 L.P.R.A. see. 4004, agresión agravada, 33 L.P.R.A. sec. 4032, y violación al art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 414 (Supl. 1998), por portación de arma blanca, todos en grado de reincidencia, relacionados con ciertos sucesos ocurridos el 22 de febrero de 1998 en la salida de la Discoteca Hollywood en el viejo San Juan, en los que resultó muerto José Collazo.
El Tribunal impuso al apelante condenas consecutivas de cárcel de 22 años y medio, 7 años y medio y 3 años, respectivamente, para cada uno de los delitos mencionados, para una pena total de 33 años.
Confirmamos.
*843 II
Según surge de la exposición narrativa de la prueba, el Ministerio Público presentó los testimonios de José Esteves García y de los agentes Carmelo Colón Hernández y Luis Montalvo Carrión.
José Esteves García declaró que tenía 19 años de edad y que trabajaba en mantenimiento. Dijo que conocía a José (“Joe”) Collazo Ruiz hacía unos dos o tres años porque eran compañeros de la Escuela Agustín Stahl de Bayamón. Cursaban diferentes grados en la escuela, él el duodécimo grado y Joe el décimo.
Relató que el 22 de febrero fue a la discoteca Hollywood, junto a Joe Collazo y Angel Recio. Este último es un amigo que vivía cerca de la casa de Joe Collazo. No sabe su edad. Fueron como a las doce de la noche en el carro de Joe. Dejaron el carro estacionado cerca del estacionamiento de Doña Felá y fueron a la discoteca, la cual quedaba cerca.
Luego de estar un rato dando vueltas por la discoteca, como a las dos de la mañana fueron al baño. El baño de la discoteca estaba en unos altos, por lo que había que subir tres o cuatro escalones. Tuvieron que hacer fila; Recio fue el primero en subir, él lo seguía y Joe era el último en la fila. El estaba como a cuatro pasos de Joe. Cuando Joe subió estaba discutiendo con un joven. El testigo no sabe el porqué de la discusión. El joven con quien Joe discutía se encontraba solo. Identificó al apelante como la persona que discutía con Joe.
Debido a la discusión, los “bouncers” de la discoteca los sacaron (a Joe, a Recio y a Esteves) del local. Al salir, el joven con quien Joe había discutido se encontraba afuera y aparentemente solo. El haló por el brazo a Joe y le dijo “vámonos”. El apelante y Joe se dijeron algo, pero él no lo oyó. Joe se fue con él a buscar el carro. El apelante salió entre los carros y empezó a pelear con Joe. Le daba puños por el costado izquierdo. No oyó lo que se decían mientras peleaban. Mientras Joe y el apelante peleaban, el testigo y Recio estaban parados mirando, sin hacer nada. Al terminar la pelea pudo ver que el apelante tenía un cuchillo en la mano. Un cuchillo que parecía curveado en la punta.
A preguntas del Juez, indicó el tamaño de la hoja.
El testigo indicó que no podía describir el mango del cuchillo, ni recordaba en qué mano lo sostenía el apelante. El apelante le tiró a dar a él. Lo hirió y él no hizo nada. El no volvió a ver al apelante.
Joe, de momento se cayó y apareció alguien a buscar el carro. No lo encontraron porque no recordaban dónde lo hábían dejado estacionado. No volvió a ver a Joe.
El fue a un dispensario, donde lo atendieron y lo refirieron al Centro Médico. Allí le tomaron varios puntos de sutura en la herida, debajo del ombligo.
Como a los dos días habló con un oficial, pero no pudo hablar bien porque estaba bajo anestesia. Describió al agresor como una persona trigueñita, un poco más baja que él, y que llevaba una gorra de pelotero y era flaco.
Fue citado y acudió al C.I.C. de San Juan donde le enseñaron nueve (9) fotos. Identificó la foto número dos como la correspondiente al agresor. Luego fue citado para que le tomaran una declaración jurada. Declaró que antes de la noche que estuvieron en la discoteca, nunca había visto al apelante.
Durante el contraiñterrogatorio indicó que en la declaración jurada la única descripción que dio del agresor fue que era una persona trigueña y más bajita que él, quien mide seis pies, sin decir cuánto medía. Declaró que *844 no dijo en la declaración jurada cómo estaba vestido el agresor, sólo mencionó que llevaba puesta una gorra sin decir el color de la misma. Sin embargo, posteriormente le dijo a un agente de la policía que la gorra era blanca.
Después que salió del hospital, como a la semana, la Policía le dijo que tenían un sospechoso. Estaba un oficial y otro compañero de éste al momento que le enseñaron las fotos en el C.I.C. En las fotos no se podía ver que las personas que estaban en ellas fueran más bajitas que él. No vio el color, ni la forma del pelo de la persona. No recuerda el color de pelo de las personas que le presentaron en el “line-up” de fotos, ni cuántas tenían el pelo abultado. Las fotos eran en blanco y negro.
Angel Recio estuvo con él todo el tiempo y no fue herido. No sabe si Angel Recio es más alto o bajito que el abogado del apelante, pero tiene la misma descripción de la persona que peleó con Joe, porque es más bajito que el testigo, es trigueño y flaco. No describió los ojos de la persona que peleó con Joe.
La noche de los hechos no recuerda cuándo salió de trabajar. Los botaron de la discoteca porque andaban con Joe. Para entrar en la discoteca, los registraban antes de entrar. No vio de donde sacó el arma la persona que atacó a Joe. Joe fue a buscarlo supuestamente para “arreglar”. Joe fue donde el apelante, el apelante no fue adonde Joe. Afuera había mucha gente y había fila para entrar a la discoteca. Afuera los “bouncers” no intervinieron. El no se metió entre ellos porque se imaginaba que iban a pelear. No vio quién sacó el puñal. Creía que era una pelea a puños. Duró de diez (10) a veinte (20) segundos. Joe no tiró ni un puno.
La próxima vez que vio al apelante fue en el tribunal.
A preguntas del tribunal, declara que se encontraba detrás de Joe como a seis pasos, cuando estaban en la discoteca. El apelante estaba de frente a Joe, de espaldas a él. La discusión antes de que los sacaran duró como un minuto. El apelante estaba de frente a Joe, y él se encontraba de espaldas. En el sitio en que estaban no había mucha iluminación. No sabe de qué discutían porque no oyó. Pensó que discutían porque movían las manos.
El apelante ya estaba afuera cuando ellos salieron. Estaba en la acera, pero había unas escaleras altas, de diez a quince escalones. Estaba frente en la acera. Habían más personas afuera. Joe estaba como a cinco pasos del apelante. Mientras Joe se acercaba al apelante, él estaba bajando las escaleras. El agarró a Joe por el brazo para buscar el carro, y el apelante apareció como a unos diez o quince pies desde que él lo haló por el brazo. No escuchó palabras entre ellos.
El Ministerio Público presentó dos fotografías del cadáver y el informe de análisis de la escena del crimen»
El agente Carmelo Colón Hernández declaró que trabaja para la Policía de Puerto Rico, en el C.I.C., División de Homicidios. El fue el agente a cargo de la investigación de la muerte de Joe Collazo Ruiz. La investigación le fue asignada el día después de los hechos. Procedió a ir a la escena, a buscar evidencia y entrevistar las personas mencionadas en el informe, una paramédico y los acompañantes del occiso. Trató de entrevistar primero a José Esteves García, quien se encontraba en el hospital, pero no pudo entrevistarlo inicialmente porque estaba bajo los efectos de fuertes sedantes. Luego pudo hablar con él.
Esteves describió al agresor como una persona de 5’8” a 5’10” de estatura, 140 libras de peso, más o menos, tez trigueña y con una gorra estilo pelotero blanca. Citó luego a la paramédico que atendió al joven en el lugar de los hechos. Ella compareció a la entrevista acompañada de otra joven que conocía de los hechos. Por lo dicho por la amiga de la paramédico, él fue a buscar el expediente de una persona que ella nombró.
*845 Buscó.el expediente de una persona llamada “Maclave”, quien residía en Monte Hatillo. Le fueron entregados los datos del joven y una fotografía. Con la fotografía que había preparó un “line-up” de fotos y se las mostró al joven herido, quien identificó a la persona que aparecía como el número dos (2) del “line-up ”. El fue a Monte Hatillo para ver si lo podía localizar, pero el día que sometió el caso no lo habían podido conseguir.
Procuró que las otras fotografías a ser utilizadas fuesen de personas de la misma edad, pelo y color de tez del apelante. También intentó conseguir fotos en que los sujetos apareciesen con los ojos cerrados, ya que la foto del apelante aparecía con los ojos cerrados. Este “line-up” fue el que posteriormente le fue mostrado al joven José Esteves García. Luego de mostrar las fotografías a Esteves, el testigo procedió a preparar el acta correspondiente. El “line-up” fue marcado como identificación del Ministerio Público. El preparó el documento porque el ¡apelante estaba ausente. Ubicó al apelante en el número dos (2) para que no fuera sugestivo.
A preguntas de la defensa, el testigo indicó que llevaba sólo un año en la División de Homicidios. En ese año había preparado cuatro actas de identificación por fotografías, siendo la de este caso la segunda de ellas. Comenzó la investigación el 23 de febrero de 1998. Para el día siguiente ya tenía un sospechoso. Fue a la casa del apelante, debió de haber sido el 25 de febrero, pero no le dejó cita para que pasara por la División de Homicidios para hacer el “line-up” físico. Para esa fecha había leído los informes sobre los hechos. Sólo llamó a los hospitales e instituciones penales para saber si el apelante estaba enfermo o preso.
Con la descripción que le suministró el joven Esteves, jamás podría identificar al sospechoso.
Luis Montalvo Carrión declaró que es agente del orden público. El 22 de febrero de 1998, luego de ocurridos los hechos, fue al lugar y cubrió la escena del crimen. No entrevistó a nadie que hubiera presenciado lo ocurrido. Habló con la fiscal Norma Longoria y con la joven que estaba dando los primeros auxilios al joven José Collazo. Esta última no sabía nada de los hechos porque cuando llegó, ya todo había terminado.
Durante el contrainterrogatorio declaró que en el informe que él preparó indicaba que el 22 de febrero de 1998, a las 3:30 de la madrugada se había suscitado una pelea en la discoteca Hollywood. Esta información la recibió de lás personas que estaban en el lugar, tanto agentes de Homicidios, como curiosos.
El Ministerio Público y la defensa estipularon que de testificar la Sra. Magdalena Ruiz Collazo declararía que era la madre de Joe Collazo Ruiz y que fue la persona que identificó el cadáver de éste en el Instituto de Ciencias Forenses.
El Ministerio Público sometió el informe de autopsia, pero no presentó el acta de la identificación mediante fotografías.
Al cierre de la prueba del Pueblo, la defensa planteó una moción de absolución perentoria, alegando que la prueba sobre la identificación del apelante había sido insuficiente. El Tribunal denegó la moción.
La defensa sometió entonces su caso sin presentar prueba.
A base de la prueba desfilada, el Tribunal halló al apelante culpable de los delitos mencionados.
El Ministerio Público solicitó que se impusieran penas con agravantes y consecutivas. El apelante se opuso. El 30 de octubre de 1998, el Tribunal pronunció sentencia, imponiendo al apelante las penalidades *846 máximas por cada uno de los delitos, aumentada por reincidencia. El Tribunal también dispuso que las penas fueran cumplidas consecutivamente.
Insatisfecho, el apelante acudió ante este Tribunal.
III
En su recurso, el apelante plantea varios errores dirigidos a cuestionar la suficiencia de la prueba presentada en su contra; en particular, la prueba sobre su identificación, a impugnar la determinación del Tribunal de Primera Instancia de denegar la moción de absolución perentoria presentada por el apelante, y la decisión del Tribunal de imponer sentencias máximas y consecutivas.
El Artículo II, Sección 11 de la Constitución consagra en nuestro ordenamiento la presunción de inocencia de todo acusado, exigiendo que toda convicción siempre esté sostenida por prueba que establezca la culpabilidad del acusado más allá de duda razonable. Véanse, Pueblo v. González Román, _, D.P.R. _ (1995), 95 J.T.S. 86, a la pág. 989; Pueblo v. Rosaly Soto, 128 D.P.R. 7291 739 (1991).
No es necesario, sin embargo, destruir toda duda posible, especulativa o imaginaria a los fines de establecer la culpabilidad del acusado. Es suficiente que el fallo del tribunal esté sostenido por prueba suficiente y satisfactoria, que establezca certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. Pueblo v. Cabán Torres, 117 D.P.R. 645, 653 (1986); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985) La duda razonable es aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado, una vez desfilada la totalidad de la prueba presentada por el ministerio fiscal. Pueblo v. Torres Rivera, 129 D.P.R. 331, 341 (1991); Pueblo v. Toro Rosas, 89 D.P.R. 169, 175 (1963).
Aunque la determinación sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho, Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299, 316 (1991); Pueblo v. Cabán Torres, 117 D.P.R. a la pág. 655, el tribunal apelativo concede gran deferencia a la determinación que hace el juzgador de los hechos a nivel de instancia y de ordinario no interviene con la misma. Pueblo v. Calderón Alvarez, _ D.P.R. _ (1996), 96 J.T.S. 57, a la pág. 1,010; Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 62-63 (1991); Pueblo v. Echevarría Rodríguez I, 128 D.P.R. a las págs. 316-317.
En ausencia de error manifiesto, pasión, prejuicio o parcialidad, no intervendremos con la apreciación de la prueba realizada por el Tribunal de Instancia. Véanse; Pueblo v. Calderón Alvarez, 96 J.T.S. 57, a la pág. 1,010; Pueblo v. Chévere Heredia, _ D.P.R. _ (1995), 95 J.T.S. 115, a la pág. 35; Pueblo v. Meléndez Rodríguez, _ D.P.R. _ (1994), 94 J.T.S. 104, a la pág. 14; Pueblo v. Bonilla Romero, 118 D.P.R. 92, 111 (1987).
Ahora bien, bajo la citada Sección 11 del Artículo II de la Constitución, el Ministerio Público viene obligado a establecer más allá de duda razonable en el juicio, no sólo los elementos del delito imputado, sino también la conexión del acusado con el crimen; esto es, su identificación como el autor de los hechos. Véase, Pueblo v. Rodríguez Maysonet, 119 D.P.R. 302, 309 (1987); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985); Pueblo v. Gómez Incera, 97 D.P.R. 249, 251-252 (1969).
Para determinar la validez de una identificación de un sospechoso, dos cuestiones principales deben dilucidarse, a saber: (1) si dicha identificación fue confiable, y (2) si en el curso de ésta no hubo irregularidades que afectasen irremediablemente derechos sustanciales del acusado. Véase, Pueblo v. Rivera, _ D.P.R. _ (1994), 94 J.T.S. 150, a la pág. 509.
*847 Un procedimiento de identificación innecesariamente sugestivo y conducente a una identificación errónea constituye una violación a la garantía constitucional al debido proceso de ley. Pueblo v. Ramos y Alvarez, 122 D.P.R. 287, 311 (1988); Pueblo v. Gómez Incera, 97 D.P.R. a las págs. 251-252; véanse, además, United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967) y Stovall v. Denno, 388 U.S. 293 (1967).
De acuerdo a la doctrina adoptada en Gómez Incera, la evidencia de identificación obtenida a través de procedimientos sugestivos resulta excluible del juicio. Véanse, United States v. Wade, 388 U.S. a las págs. 239-241; Gilbert v. California, 388 U.S. a la pág. 272; véase, además, Pueblo v. Rey Marrero, 109 D.P.R. 739 (1980).
La Regla 252 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 252, gobierna el procedimiento para la identificación de sospechosos con antelación al juicio por medio de rueda de detenidos y a través de fotografías. Pueblo v. Robledo, 127 D.P.R. 964, 968 (1991); Pueblo v. Montañez Ramos, 100 D.P.R. 911, 915 (1972).
La Regla 252.1 establece el procedimiento para la rueda de detenidos. Se exige, inter alia, que los testigos no vean al sospechoso, ni a los demás integrantes de la rueda de detenidos con anterioridad a la celebración de la rueda de detenidos, que se levante un breve acta sobre el procedimiento y que se tome una foto de la rueda de detenidos tal y como se llevó a cabo.
Ahora bien, el hecho de que no se siga este procedimiento no tiene el efecto de automáticamente viciar la identificación o hacerla inadmisible. Pueblo v. Robledo, 127 D.P.R. a la pág. 968; Pueblo v. Ortiz Pérez, 123 D.P.R. 216, 223 (1989); Pueblo v. De Jesús Rivera, 113 D.P.R. 817, 822-823 (1983); Pueblo v. Rivera Navarro, 113 D.P.R. 642, 649-652 (1982).
Lo importante es que la identificación sea “libre, espontánea y confiable. ” Pueblo v. Ramos v Alvarez, 122 D.P.R. a la pág. 312; Pueblo v. Peterson Pietersz, 107 D.P.R. 172, 183-184 (1978).
La Regla 252.2, por su parte, regula el procedimiento de identificación mediante el uso de fotografías. Este procedimiento puede utilizarse: cuando por razones fuera del control de los agentes o funcionarios del orden público no fuere posible realizar una rueda de detenidos; (2) no exista sospechoso del acto delictivo, o (3) cuando, existiendo un sospechoso, éste estuviere ausente o se negare a participar en la rueda de detenidos. Id.; Pueblo v. Rosaly Soto, 128 D.P.R. 729, 751 (1991); Pueblo v. Suárez Sánchez, 103 D.P.R. 10, 15 (1974); Pagán Hernández v. Alcaide, 102 D.P.R. 101, 111 (1974).
La sección (b) de la Regla 252.2 establece las normas para la identificación a través de fotografías. Dicho precepto establece:

“(1) Se le mostrarán al testigo no menos de (9) nueve fotografías incluyendo la del sospechoso y éstas presentarán, en adición al sospechoso, personas de rasgos similares a éste.

(3) En ningún caso se le sugerirá al testigo la persona que debe seleccionar, mediante la forma de llevar a cabo el procedimiento, por marcas en las fotografías, o cualquier otro medio.

(4) Celebrada la identificación fotográfica, si el testigo identificara al autor de los hechos delictivos se 
*848
procederá a levantar un acta que resuma brevemente el procedimiento seguido y se identificarán las fotografías utilizadas de manera que posteriormente pueda establecerse cuáles fueron las fotografías presentadas al testigo. ”

Al igual que en el caso de la identificación por rueda de detenidos, no toda violación al procedimiento establecido por la Regla tiene el efecto de invalidar la identificación. Pueblo v. Ortiz Pérez, 123 D.P.R. 216, 223 (1989); Pueblo v. De Jesús Rivera, 113 D.P.R. 817, 822-823 (1983); Pueblo v. Rivera Navarro, 113 D.P.R. 642, 649-652 (1982).
El Tribunal Supremo de Puerto Rico ha expresado que:
“la identificación por fotografías bajo circunstancias que no induzcan a sugestión o que no exijan la utilización de otros métodos es permisible. La validez de la identificación debe determinarse a la luz de las circunstancias particulares de cada caso. Simmons v. United States, 390 U.S. 377, 383 (1968). El procedimiento de identificación mediante fotografías es sostenido a menos que se trate de una situación tan crasamente sugestiva que de lugar a una identificación errónea....[L]o importante es que la identificación sea libre, espontánea y confiable.” Pueblo v. Rosso Vázquez, 105 D.P.R. 905, 908 (1977); vénzase, además, Pueblo v. Lebrón Bones, 110 D.P.R. 780, 781 (1981); Pueblo v. Figueroa Torres, 102 D.P.R. 76, 80-81 (1974).
La determinación de cuándo una violación al procedimiento establecido por la Regla 252 tiene el efecto de invalidar una identificación depende más bien de la totalidad de las circunstancias. Pueblo v. Rivera, 94 J.T.S. 150, a la pág. 509; Pueblo v. Torres Ramos, 121 D.P.R. 747, 751 (1988).
Para evaluar la confiabilidad de la identificación, deben considerarse los siguientes criterios: (1) la oportunidad que tuvo el testigo de observar al acusado en el momento en que ocurre el acto delictivo, (2) el grado de atención del testigo, (3) la corrección de la descripción, (4) el nivel de certeza en la identificación, y (5) el tiempo transcurrido entre el crimen y la confrontación. Véanse, Pueblo v. Rivera, 94 J.T.S. 150, a la pág. 509; Pueblo v. Robledo, 127 D.P.R. 964, 969 (1991); Pueblo v. Mattei Torres, 121 D.P.R. 600, 608 (1988); Pueblo v. Rodríguez, Maysonet, 119 D.P.R. a las págs. 309-310; Pueblo v. Peterson Pietersz, 107 D.P.R. a la pág. 183; véanse, además, Neil v. Biggera, 409 U.S. 188 (1972) y Manson v. Brathwaite, 432 U.S. 98 (1977) Ernesto Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. I, Editorial Forum, 1991, a las págs. 266-267.
En la situación de autos, el apelante fue identificado mediante fotografías, toda vez que supuestamente no estuvo disponible para una rueda de detenidos. Coincidimos con la parte apelante en que el testimonio de los agentes sobre este particular fue vago. No está claro que los oficiales del orden público hicieran las gestiones suficientes para asegurar la comparecencia del acusado a la rueda de detenidos o que el empleo de fotografías fuese del todo indispensable.
Ahora bien, no pensamos que lo anterior necesariamente implique que deba invalidarse la identificación. El apelante, en este sentido, no ha apuntado a factor alguno que tienda a sugerir que el proceso de identificación mediante fotografías estuviese viciado de sugestividad. Al contrario, el testimonio del agente Colón Hernández tendió a establecer que dicho agente fue cuidadoso al preparar el “line-up” de fotografías, tratando de conseguir fotografías parecidas a las del apelante y ubicando la de éste en un lugar neutral.
El apelante plantea que el Ministerio Público no presentó en evidencia el acta de la identificación. Dicha acta, sin embargo, resultaba propiamente prueba de referencia cuyo único peso como evidencia dependía más bien del testimonio del Sr. Esteves García, quien declaró como testigo y repitió su identificación del apelante *849 en corte abierta. El acta fue marcada como identificación y estuvo disponible para que el apelante la examinara, por lo que no percibimos perjuicio alguno para dicha parte. 
En cualquier caso, consideramos que, a la luz de los criterios adoptados por la jurisprudencia, la identificación del apelante cuenta con suficientes garantías de confiabilidad. En efecto, conforme al testimonio de Esteves, dicho testigo pudo observar al apelante en dos ocasiones, dentro y fuera de la discoteca. El apelante estaba enfrascado en una discusión con uno de los acompañantes del testigo, por lo que éste tenía motivos para fijarse en él, no siendo la observación meramente casual. El testigo Esteves vio nuevamente al apelante fuera de la discoteca y lo reconoció en ese momento como la persona que había discutido con su amigo Joe. Según su testimonio, Esteves trató de llevarse a Joe de allí reconociendo que los jóvenes iban a pelear.
El apelante plantea que de acuerdo a la versión brindada por Esteves a la Policía, este último fue vago en su descripción del apelante, indicando meramente que el agresor había sido “una persona de 5’8” a 5’ 10” de estatura, 140 libras de peso, más o menos, tez trigueña y con una gorra estilo pelotero blanca”. El apelante plantea que el propio agente Colón Hernández testificó que con esta descripción resultaba imposible identificar al agresor.
Es cierto que la descripción brindada por el testigo no fue particularizante en sus detalles y que la misma podía haber aplicado a numerosos otros individuos de fisonomía parecida a la del apelante. No estimamos, sin embargo, que esto sea base para descartar el testimonio. Lo cierto es que la descripción ofrecida por el testigo coincidía, en sus rasgos esenciales, con la del apelante, que es lo que es importante.
Un testigo que no está entrenado para la observación y que ha presenciado un delito bajo circunstancias de estrés, a menudo no está en posición de ofrecer una descripción pormenorizada de su asaltante, suficiente sin más para fijar su identidad. Esto no quiere decir, sin embargo, que no pueda identificarlo. La pertinencia de este tipo de descripción, ofrecida poco después de los hechos, es para excluir sospechosos —si la descripción de éstos resultase inconsistente con la ofrecida por el testigo— más que para incluirlos.
Cabe señalar, en este sentido, que el testigo no demostró vacilación al identificar al apelante. La identificación mediante fotografías se llevó a cabo pocos días después de los hechos, por lo que dicho elemento también favorece sostener la identificación.
Consideramos, a la luz de los factores mencionados, que la identificación del apelante fue libre, espontánea y confiable. Pueblo v. Rosso Vázquez, 105 D.P.R. a la pág. 908 (1977); Pueblo v. Lebrón Bones, 110 D.P.R. a la pág. 781; Pueblo v. Figueroa Torres, 102 D.P.R. a las págs. 80-81; véase, además, Pueblo v. Peterson Pietersz, 107 D.P.R. 172.
Reconocemos que la confiabilidad de la identificación del apelante descansa en última instancia solamente en la declaración del testigo Esteves. Esto no es base para intervenir con la determinación del foro de instancia. Véase, Pueblo v. Rodríguez Román, 128 D.P.R. 121, 128 (1991) (convalidando identificación fundada en observación de un acusado “por varios segundos”).
La Regla 10(D) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(D), establece que la evidencia directa de un testigo que ha merecido crédito al tribunal es prueba suficiente de cualquier hecho. Es norma reiterada en nuestra jurisdicción que un tribunal apelativo no intervendrá con la apreciación de la prueba realizada por el Tribunal de Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Véanse, Pueblo v. Calderón Alvarez, 96 J.T.S. 57, a la pág. 1,010; Pueblo v. Chévere Heredia, _ D.P.R. _ (1995), 95 J.T.S. 115, a la pág. 35; Pueblo v. Meléndez Rodríguez, _ D.P.R. _ (1994), 94 J.T.S. 104, a la pág. 14; Pueblo v. *850 Bonilla Romero, 118 D.P.R. 92, 111 (1987).
F.n ausencia de dichos factores, declinamos alterar la adjudicación realizada por el Tribunal de Primera Instancia en este caso. Pueblo v. Rodríguez Román, 128 D.P.R. a la pág. 129; Pueblo v. Cabán Torres, 117 D.P.R. a la pág. 654; véase, además, Pueblo v. Lebrón Bones, 110 D.P.R. 780.
Según ha observado nuestro Tribunal Supremo: “La identificación de criminales no está exenta de la sábiá norma que detiene y restringe la intervención de los tribunales de apelación frente a la Mejor posición ¿él juez de instancia para adjudicar credibilidad debiendo suplantar sus determinaciones únicamente cuando no estén sostenidas por la prueba. ” Pueblo v. Suárez Sánchez, 103 D.P.R. 10, 21-22 (1974).
El apelante también se queja de que, en el presente caso, los agentes del orden publicó recibieron úña confidencia sobre la identidad del apelante de una persona que no fue llamada a testificar, rii füe citada para la identificación del apelante. La Regla 32 de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 32, autoriza a los agentes de la Policía a descansar en información confidencial de esta naturaleza, concediendo ün privilegio a estos informantes. Véase, Pueblo v. Turner Goodman, 113 D.P.R. 243, 246 n. 1 (1982); Benítez v. Tribunal Superior, 102 D.P.R. 601, 605 (1974).
Finalmente, el apelante plantea que erró el Tribunal al imponerle sentencias máximas consecutivas, condenándolo a una pena de treinta y tres (33) años de prisión.
La determinación de imponer una pena con o sin agravantes o de forma concurrente o coñsecutiva es Uña que, de ordinario, está confiada a la sana discreción del Tribunal. Véase, Pueblo v. Chévere Heredia, _ D.P.R. _ (1995), 95 J.T.S. 115, a la pág. 38; Pueblo v. Rivera, _ D.P.R. _ (1994), 94 J.T.S. 150, a la pág. 511; Pueblo v. Santiago Acosta, 121 D.P.R. 727, 744 (1988). Salvo en casos claros de abuso dé dicha discreción, los tribunales apelativos no deben intervenir con el ejercicio de esta discreción. Pueblo v. Rodríguez Santana, _ D.P.R. _ (1998), 98 J.T.S. 141, a la pág. 234; Pueblo v. Chévere Heredia, 95 J.T.S. 115, a la pág. 38.
Al ejercitar la misma, los jueces deben seguir los criterios establecidos en la Regla 171 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 171, a tenor con los hechos y circunstancias de cada caso en particular, y la situación individual del convicto. Pueblo v. Rodríguez Santana, 98 J.T.S. 141, a la pág. 234; Pueblo v. Canino Ortiz, _ D.P.R. _ (1993), 93 J.T.S. 157, a la pág. 11,320.
En el caso de autos, según señalara el Ministerio Público, los hechos del caso establecían la presencia de varios agravantes bajo la Regla 171, en particular: que el delito fue uno de violencia y se causó grave daño corporal a las víctimas; que el apelante utilizó un arma en la comisión del mismo; que el delito envolvió más de una víctima, y que el acusado tenía un historial previo delictivo. 34 L.P.R.A. Ap. II, R. 171. En estas circunstancias, no percibimos abuso alguno de discreción por parte del foro de Primera Instancia. Pueblo v. Chévere Heredia, 95 J.T.S. 115, a la pág. 38; Pueblo v. Rivera, 94 J.T.S. 150, a la pág. 50.
Las penas impuestas, de otro modo, están dentro de los límites fijados por la ley. Pueblo v. Chévere Heredia, 95 J.T.S. 115, a la pág. 38.
Por los fundamentos expresados, se confirma la sentencia apelada.
Lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
*851 Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2000 DTA 39
1. Cabe señalar que la Regla 252.1 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 252.1, no requiere que el acta y fotografía tomada durante la rueda de detenidos sean presentadas en el juicio o, incluso, que sean automáticamente entregadas a la defensa. Dicho precepto dispone que dicho documento “formará parte del expediente Policíaco o fiscal correspondiente y su obtención por un acusado se regirá por las reglas de procedimiento criminal vigentes. ” Id.